400 S.E.2d 268

**Antonia Jeane GARDNER**

v.

**Wayne B. GARDNER.**

No. 19616.

Supreme Court of Appeals of West Virginia.

Dec. 6, 1990.

Roger D. Curry, McLaughlin and Curry, Fairmont, for Antonia Jeane Gardner.

Robert C. Gorey, Jr., Clagett & Gorey, Fairmont, for Wayne B. Gardner.

WORKMAN, Justice:

Antonia Jeane Gardner appeals from an order of the Circuit Court of Marion County modifying an earlier divorce order by requiring Wayne B. Gardner, the appellant's former husband, to pay one-half of the non-insured health-related expenses for their children, but failing to require Mr. Gardner to pay the amount required by the child support guidelines established pursuant to *W.Va.Code*, 48A-2-8 [1989].[1] On appeal, Mrs. Gardner alleges that the circuit court should have required Mr. Gardner to pay the amount required by the child support guidelines. We agree and, therefore, reverse and remand this case.

On January 18, 1984, Mr. and Mrs. Gardner obtained a divorce because of irreconcilable differences. Mrs. Gardner was awarded custody of the parties' children, Melanie, then age nine and Scarlett, then age five. Mr. Gardner was directed to pay $200 per month for the support of the children.

On September 15, 1987, Mrs. Gardner sought a modification of the support provisions for two reasons: (1) her recently built house cost substantially more than anticipated and required payments of about $700 per month rather than the $370 originally anticipated; and (2) the children required additional support because they were older.

Mrs. Gardner, with the knowledge and approval of Mr. Gardner, decided to build a new house. Unfortunately, the actual building costs greatly exceeded the anticipated costs. Neither Mr. nor Mrs. Gardner realized the extent of the additional costs until it was too late. As a result of the unanticipated construction costs, Mrs. Gardner's house payment increased from approximately $370 per month to $700 per month.

In addition, the needs of the children had increased during the three and one-half years since the divorce decree. In particular, Melanie required orthodontic treatment, the cost of which was in excess of $2,400. Mr. Gardner made some voluntary payments, totalling about $330, but in May 1987 he stopped contributing.

At the time of the modification petition, Mr. and Mrs. Gardner submitted verified financial statements. Mr. Gardner, who remarried, was employed by the U.S. Postal Service and his gross income was approximately $2,000 per month. Mrs. Gardner was employed by the City of Fairmont and her gross income was $1,200 per month. Both parties had considerable expenses.

On November 15, 1987, the family law master recommended that with the limited exception of the orthodontic treatment, Mrs. Gardner's change of circumstances were anticipated by the parties at the time of the divorce. The family law master limited his recommendations to requiring the parties to share equally all costs for the children's non-insured health-related expenses. The family law master failed to apply the guidelines for child support established pursuant to *W.Va.Code*, 48A-2-8 [1989], which indicate a support payment for the children of about $350 to $400 per month.[2] By order entered June 12, 1989, the circuit court adopted the recommendations of the family law master. Mrs. Gardner appeals to this Court alleging that the circuit court should have used the guidelines to increase her monthly child support in addition to ordering equal contribution for the children's non-insured health-related expenses.

I

The issue before us is whether a modification of the child support order to comply

---

1. Although *W.Va.Code*, 48A-2-8 was amended in 1989, the pertinent section was in effect in 1987 when this action arose.

2. The amount of child support required by the guidelines in this case is estimated because of the family law master's determination not to apply the guidelines.

with the recommended guidelines is warranted. The authority to award or modify child support in a divorce proceeding is found in *W.Va.Code*, 48–2–15 [1990], which states in pertinent part:

(b) Upon ordering the annulment of a marriage or a divorce or granting of [a] decree of separate maintenance, the court may further order all or any part of the following relief: ...

(e) At any time after the entry of an order pursuant to the provisions of this section, ... the court may also from time to time afterward, on the verified petition of either of the parties or other proper person having actual or legal custody of the minor child or children of the parties, revise or alter such order concerning the custody and maintenance of the children ...[3]

Until the 1990 amendment, *W.Va.Code*, 48–2–15(e)'s only guidance on when a court should modify a previous support order was that "the court may ... make a new order concerning the same, as the circumstances of the parents or other proper person or persons and the benefit of the children may require."[4] In keeping with this authority, in Syllabus Point 1 of *Lambert*

*v. Miller*, 178 W.Va. 224, 358 S.E.2d 785 (1987), we outlined the following criteria for modification of a child support order:

A child support order may be modified only upon a substantial change of circumstances which was uncontemplated by either of the parties at the time the order was entered and upon a showing that the benefit of the child requires such modification. *W.Va.Code*, 48–2–15(e) [1986].

Our holding in *Lambert* was based on our previous cases and our acknowledgement that *W.Va.Code*, 48–2–15(e) [1986] provided "one condition precedent to the modification of child support orders ... that [is when] the needs of the child or children require such modification." *Id.*, 178 W.Va. at 228, 358 S.E.2d at 789. Thus the pole star for determining when a modification of a child support order is necessary is the welfare of the child.[5]

In *Lambert*, we outlined several factors or circumstances that a family law master or circuit court may consider to determine when a change in circumstances justifying modification has occurred.[6] These factors may include:

---

**3.** *W.Va.Code* 48–2–15(e) [1990], states in its entirety:

At any time after the entry of an order pursuant to the provisions of this section, the court may, upon the verified petition of either of the parties, revise or alter such order concerning the maintenance of the parties, or either of them, and make a new order concerning the same, as the altered circumstances or needs of the parties may render necessary to meet the ends of justice. The court may also from time to time afterward, on the verified petition of either of the parties or other proper person having actual or legal custody of the minor child or children of the parties, revise or alter such order concerning the custody and support of the children, and make a new order concerning the same, as the circumstances of the parents or other proper person or persons and the benefit of the children may require: Provided, That an order providing for child support payments may be revised or altered for the reason, inter alia, that the existing order provides for child support payments in an amount that is less than eighty-five percent or more than one hundred fifteen percent of the amount that would be required to be paid under the child support guidelines promulgated pursuant to the provisions of section eight [§ 48A–2–8], article two,

chapter forty-eight-a of this code. In granting relief under this subsection, the court may, where other means are not conveniently available, alter any prior order of the court with respect to the distribution of marital property, if such property is still held by the parties, and if necessary to give effect to a modification of alimony, child support or child custody or necessary to avoid an inequitable or unjust result which would be caused by the manner in which the modification will affect the prior distribution of marital property.

**4.** *See infra* p. 266 for a discussion of the 1990 amendment to *W.Va.Code*, 48–2–15(e).

**5.** Indeed, the Advisory Panel on Child Support Guidelines has recommended "that Congress require states to ameliorate the current barriers to modification by requiring that a change in circumstances be the sole criterion for modification." U.S. Department of Health and Human Services. *Development of Guidelines For Child Support Orders: Advisory Panel Recommendations and Final Report.* September 1987, p. I–9 (hereinafter, Final Report).

**6.** In order to modify an order concerning the parties' maintenance, *W.Va.Code*, 48–2–15(e)

... a change in the financial resources or ability to pay on part of the parent obligated to pay support, needs of the child or children for whom support is paid, a good or bad faith motive of the obligated parent in sustaining a reduction of income, and the duration of the change, namely, whether the change is temporary or permanent. (Citations omitted).

*Id.*, 178 W.Va. at 226, 358 S.E.2d at 787.

*Lambert's* requirement that a party show a change justifying modification is consistent with our previous holdings. In *Lambert, supra,* the father sought to terminate his child support to the mother because one of their two children was living with him. Because at the time of the original support agreement, the father knew that his son would be living with him, we required him to continue to pay child support because the change in the son's residence was considered when the original agreement was entered a mere 8 months earlier. In *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987), we noted that the parties knew that after the divorce the husband would have a separate residence and reasonably should have known that the wife would return to part-time work. Because at the time of the original order, the parties knew of these circumstances, we refused to consider them to be changes requiring modification. *Goff, supra,* 177 W.Va. at 747, 356 S.E.2d at 501.

In *Nichols v. Nichols,* 160 W.Va. 514, 517, 236 S.E.2d 36, 37–38 (1977), we refused to consider an expected salary increase as a change requiring modification because the parties, at the time of the divorce decree, "were fully aware of the fact that Duane Nichols would in all probability receive a 7–10% salary increase annually." In *Holley v. Holley,* 181 W.Va. 396, 382 S.E.2d 590 (1989), the need to change housing because of the "disrepair" of the marital home, was considered "a material, uncontemplated change of circumstances justifying a modification of child support." *Id.*, 181 W.Va. at 397, 382 S.E.2d at 591.[7] In *Corbin v. Corbin,* 157 W.Va. 967, 206 S.E.2d 898, 903 (1974), we recognized that inflation or a change in the cost of living can be a substantial change requiring modification.[8]

■ In *Lambert, supra,* we also attempted to determine if the change was "contemplated at the time of the original agreement" and, therefore, already a part of the support order. *Lambert, supra,* 178 W.Va. at 227, 358 S.E.2d at 788. The factual determination of what the parties knew or reasonably should have known at the time of the original order is part of the recognition that the parties reached a valid agreement. However, the requirement that the change be "uncontemplated by either of the parties," does not mean that the court order has anticipated all possible changes.

■ Indeed most divorce orders do not anticipate changes caused by inflation or the increased needs of children as they mature.[9] In addition, sudden changes, not anticipated or planned for by the parties, can occur in housing, transportation, education and other areas. The determination that the change be "uncontemplated by either of the parties" is a factual determi-

[1990] requires a verified petition for "a new order concerning the same, as the altered circumstances or needs of the parties may render necessary to meet the ends of justice."

7. Although the trial court in *Holley, supra* 181 W.Va. at 397, 382 S.E.2d at 591, expressed some reservations about determination of a substantial change, the issue was not fairly raised on appeal.

8. Although this line of cases usually refers to agreements, the same principles apply to divorce orders wherein no agreement is reached by the parties.

9. Research on the adequacy of existing child support orders has found the absence of routine, periodic modifications to be a major contributory factor to a large shortfall in the level of existing orders. "The gap between the child support reported to be due and that estimated to be payable under the ... [child support] guidelines, was $17.6 billion." Williams, Robert G. "Modifications of Child Support Orders." Paper presented at the 3rd National Child Support Conference, American Bar Association, Arlington, Va., May 10, 1989.

nation and should not bar most modification requests.[10]

Although most parties to a divorce are aware that the needs of children increase as the children mature, such increases are difficult to predict. Most parties at the time of divorce do not fully contemplate the increased expenditures required to meet an older child's needs.[11] The legislature has also recognized that expenditures on children increase as the children grow older. *See W.Va.Code,* 48A–2–8(f)(5) [1989].[12] *See Law v. Law,* 177 W.Va. 766, 356 S.E.2d 637 (1987) (increased expenses were partly due to the increase in age of her infant children); *Sallaz v. Sigmund,* 181 W.Va. 302, 382 S.E.2d 496 (1989) (increased expenses attributed to children were the result of increased consumption in the household). Similarly, the increased costs of living due to inflation or other economic factors are not predictable with any degree of precision.[13]

■ We, therefore, hold that in addition to the factors or circumstances listed for consideration in *Lambert, supra,* 178

W.Va. at 226, 358 S.E.2d at 787, the family law master or circuit court may determine that a substantial change in circumstances has occurred because of a change in the cost of living caused by inflation or increases in the children's needs because they are older, or unexpected changes affecting basic needs such as housing or transportation. The family law master or circuit court should, therefore, examine the final order, even if based on an agreement, to determine if the order anticipated the alleged changes and adequately addressed the changes.[14]

In 1990 the legislature modified *W.Va. Code,* 48–2–15(e) [1990], to allow modification of a child support award that is not within 15% of the amount required under the child support guidelines. *W.Va.Code,* 48–2–15(e) [1990], states in pertinent part:

Provided, That an order providing for child support payments may be revised or altered for the reason, inter alia, that the existing order provides for child support payments in the amount that is less than eighty-five percent or more than

**10.** Many cases asking for increases in child support were rejected in the lower courts because the original order included payments for basic needs. Generally, the order did not include adjustments for inflation, increased costs because of the child's maturation or increased costs in basic necessities. Lower courts incorrectly interpreted *Lambert, supra,* as attributing long-range planning to the order without specific evidence of such planning.

**11.** The current estimated annual expense on a single child age 0–2 by a middle-income family is $7,080; for a child age 6–8 is $7,470; for a child age 12–14 is $8,110; and for a child age 15–17 is $8,620. The pattern of increased expenditures for the older child does not vary with household income or geographical region. *See* U.S. Department of Agriculture. Family Economics Research Group. Lino, Mark. "Expenditures on a Child by Husband–Wife Families," *Family Economics Review,* September 1990, 2–18.

**12.** Although *W.Va.Code,* 48A–2–8, was amended in 1989 the code section in effect at the time of this proceeding has the same finding.

**13.** For example, between 1977 and 1987, inflation reduced the real value of a $500 per month support award to $261. Final Report, *supra* n. 5, p. II–ix.

**14.** We note that after our decision in *Lambert, supra,* the legislature in 1988 adopted 6 *W.Va.*

*Code of State Rules* § 78–16–20.1. The effect of the adoption of a legislative rule that attempts to overrule a decision by this Court is not raised by this appeal because both the modification request and the family law master's recommended decision occurred before the adoption of this legislative rule and, therefore, we decline to address this issue. 6 *W.Va.Code of State Rules* § 78–16–20.1 states:

A party seeking a modification of a child support order must show a substantial change in circumstances since the entry of the existing order, regardless of whether such change was within the contemplation of the parties at the time the order was entered. The Legislature, by authorizing the promulgation of this legislative rule by general law during the regular session of the Legislature, one thousand nine hundred eighty-eight, expressly intends to overrule the decision of the Supreme Court of Appeals in *Lambert v. Miller,* [178] W.Va. [224], 358 S.E.2d 785 (1987), to the extent that the decision in such case conflicts with the provisions of this subsection 20.1.

The rule was promulgated because many child support modification requests were being unjustly denied due to a misunderstanding of *Lambert's* requirement of an "uncontemplated" change. The underlying purpose of this legislative rule, as well as the holding in this case, is to broaden the application of *Lambert* to assure the welfare of the child or children.

one hundred fifteen percent of the amount that would be required to be paid under the child support guidelines promulgated pursuant to the provisions of section eight [§ 48A–2–8], article two, chapter forty-eight-a of this code.

█ Because of the amendment to *W. Va. Code*, 48–2–15(e) [1990] and the failure of lower courts correctly to interpret *Lambert, supra*, we hold that for cases arising before July 1, 1990, a party seeking a modification of a child support order must show that the welfare of the child or children requires the modification and that a substantial change of circumstances occurred after the entry of the existing order that was not adequately dealt with in that order. For cases arising after July 1, 1990, a party seeking a modification of a child support order may either meet the criteria outlined above or show that the support award is not within 15% of the child support guidelines adopted pursuant to *W. Va. Code*, 48A–2–8 [1989].[15]

█ Because the present case arose before July 1, 1990, Mrs. Gardner must show that the welfare of the children requires the modification and that a substantial change in circumstances occurred after her divorce order that was not adequately dealt with in that order. According to the record, Mrs. Gardner showed that her children's welfare was affected by the increase in housing costs, by the need for orthodontic treatment and by the increased needs of her maturing children. *See Rickman v.* *Rickman*, 266 Ala. 371, 96 So.2d 674 (1957) (requiring a parent to pay for a child's orthodontic treatment if it is in the best interests of the child). The Gardners' divorce order did not adequately deal with these changes of circumstances. Therefore, we find that Mrs. Gardner presented sufficient evidence of change to require a modification of the child support order.

## II

*W. Va. Code*, 48A–2–8(e) [1986], states that the child support "guidelines shall have application to cases of divorce, paternity, actions for support, and modification thereof." This Court has been emphatic in support of the principle that the application of the child support guidelines must be considered in every case concerning child support. In the Syllabus, in part, *Holley v. Holley*, 181 W.Va. 396, 382 S.E.2d 590 (1989), we stated:

> When a family law master or a circuit court enters an order awarding or modifying child support, the amount of the child support shall be in accordance with the established state guidelines, set forth in 6 *W. Va. Code of States Rules* §§ 78–16–1 to 78–16–20 (1988).

Furthermore, the child support guidelines are required by federal law. 42 *U.S.C.* § 667 [1988]. *See also* 45 C.F.R. § 302.56 [1989].[16] *W. Va. Code*, 48A–2–8(a) [1989] requires the director of the child advocate office to establish, by legislative

**15.** Because 42 *U.S.C.* § 666(a)(10)(B) (the Family Support Act of 1988) requires States to implement "a process for the periodic review and adjustment of child support orders being enforced under this [act] ... not later than 36 months after the establishment of the order ...," the legislature amended *W. Va. Code*, 48A–3–6 [1990], to include a periodic review by the children's advocate. *W. Va. Code*, 48A–3–6 [1990], provides in pertinent part:

> (a) In every case in which a final judgment containing a child support order has been entered in a domestic relations matter, the children's advocate shall, once every three years or upon receipt of a written request from an obligee or an obligor made not more than once by a party each two years, examine the records and conduct any investigation considered necessary to determine whether the child support amount should be increased

or decreased in view of a temporary or permanent change in physical custody of the child which the court has not ordered, increased need of the child or changed financial conditions, unless:

> (1) If a child is being supported, in whole or in part, by assistance payments from the division of human services, the children's advocate has determined that such a review would not be in the best interests of the child and neither parent has requested a review;

> (2) In the case of any other order, neither parent has requested a review.

**16.** 42 *U.S.C.* § 667 [1988] creates a rebuttable presumption that the amount of the child support that results from the application of the state guidelines is the correct amount of child support absent specific findings to negate the presumption.

rule, guidelines for the award of child support. 6 *W.Va.Code of State Rules* §§ 78–16–1 to 78–16–20 [1988] is the current version of the rules. These child support guidelines "implicitly provided for a rebuttable presumption that the amount of the award of child support which would result from the application of such guidelines is the correct amount of child support to be awarded." *Holley, supra,* 181 W.Va. at 398, 382 S.E.2d at 592.[17]

■ *W.Va.Code,* 48A–2–8(a) [1989], sets forth the method for applying the child support guidelines. *W.Va.Code,* 48A–2–8(a) [1989] states, in part:

The director of the child advocate office shall, by legislative rule, establish guidelines for child support award amounts so as to ensure greater uniformity by those persons who make child support recommendations and enter child support orders, and to increase predictability for parents, children and other persons who are directly affected by child support orders. There shall be a rebuttable presumption, in any proceeding before a family law master or circuit court judge for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption in that case.

The amount of child support determined in accordance with the guidelines is presumptively correct. In order to rebut the presumption in a particular case, the circuit court or family law master must make a written finding or a specific finding on the record that the application would be unjust or inappropriate. *W.Va.Code,* 48A–2–8(a) [1989], further provides, in part:

The guidelines shall not be followed:

(1) When the child support award proposed to be made pursuant to the guidelines has been disclosed to the parties and each party has made a knowing and intelligent waiver of said amount, and the support obligors have entered into an agreement which provides for the custody and support of the child or children of the parties; or

(2) When the child support award proposed to be made pursuant to the guidelines would be contrary to the best interests of the child or children, or contrary to the best interests of the parties.

■ Therefore, once a family law master or circuit court finds that a party has shown a change of circumstances justifying modification of child support, the amount of child support shall be in accordance with the child support guidelines established pursuant to *W.Va.Code,* 48A–2–8(a) [1989], unless the family law master or the court shall determine, in a written finding or a specific finding on the record, that the application of the guidelines would be either unjust, inappropriate, waived by the parties pursuant to the safeguards outlined in *W.Va.Code,* 48A–2–8(a)(1) [1989], or contrary to the best interests of the children or the parties.

In the present case, the circuit court, because the need for modification is established, should use the child support guidelines to determine the amount of support, unless the court, in a written finding or a specific finding on the record, determines that in this particular case the application of the guidelines would be unjust, inappropriate, waived pursuant to the safeguards outlined in *W.Va.Code,* 48A–2–8(a)(1) [1989], or contrary to the best interests of the children or the parties.

For the above stated reasons, we reverse the circuit court's order and remand this case for further proceedings consistent with this opinion.

Reversed and Remanded.

---

**17.** *Holley, supra,* 181 W.Va. at 398, 382 S.E.2d at 592, recognized an implicit rebuttal presumption for the amount of support resulting from the application of the guidelines. *W.Va.Code,* 48A–2–8(a) [1989], explicitly creates the same presumption.