419 S.E.2d 440

**Larry H. MARTIN, Appellant,**

v.

**Mary Ann MARTIN, Appellee.**

No. 20004.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 24, 1991.

Decided Nov. 1, 1991.

Concurring Opinion of Justice
Workman July 23, 1992.

Peter J. Conley, Clarksburg, for appellant.

Delby B. Pool, Clarksburg, for appellee.

PER CURIAM:

Larry H. Martin appeals the decision of the Circuit Court of Harrison County, which refused to order the sale of the former marital house and required him to pay additional alimony of $150 per month to his former wife, Mary Ann Martin. On appeal, Mr. Martin alleges that the sale of the house is required under the terms of the parties' divorce order and that the payment of additional alimony is not justified. Because our review of the record shows that the decision of the circuit court is equitable, we affirm the decision.

Mr. and Mrs. Martin's original divorce of February 26, 1985 provided Mrs. Martin with exclusive use of the former marital home until December 1, 1989, provided that she did not remarry, and awarded her permanent alimony of $275 per month. After December 1, 1989, when Mrs. Martin refused to allow the sale of the former marital home, Mr. Martin instituted suit to sell the former marital home with an equal division of the proceeds. Mrs. Martin maintains that she has a right to possess the former marital home and she also counterclaimed for an increase in alimony.

In 1985, after a 22 year marriage, the parties were divorced and Mr. Martin was awarded custody of the sixteen year old son, the parties' only minor child.[1] Mrs. Martin, primarily a homemaker for most of the parties' marriage, became a substitute cook. Mr. Martin, an independent contractor, earned about $15,000 in 1984. After

---

1. The parties also have a daughter, then 20 years old.

the divorce, Mr. Martin, who has remarried and is living with his second wife and his step-child, more than tripled his income and has accumulated substantial savings. Mrs. Martin earns $588 per month as a full-time cook for the Harrison County Board of Education. For the past three years, the parties' daughter and her infant child have lived with Mrs. Martin in the former marital home. Mrs. Martin currently receives food stamps and her daughter pays the water and sewage bill.

The circuit court decided that the provision for the sale of the marital home, which was included in the property settlement of the parties and was "approved and confirmed" by the parties' divorce order, did not clearly require the sale of the former marital home after December 1, 1989. The circuit court declined to adopt Mr. Martin's contract interpretation because to do so would make the contract one of adhesion. The circuit court also awarded Mrs. Martin an increase in alimony of $150 per month for a total payment of $425 per month.

Mr. Martin appealed to this Court seeking the sale of the former marital home and seeking to rescind the increase in alimony because any changes in the parties' circumstances was contemplated at the time of divorce.

## I.

The former marital home was built by the parties and has an estimated value of $72,000. The parties' "Property Settlement and Agreement," which was approved and confirmed by the divorce order, contained the following provision concerning the former marital home:

(4) The parties jointly own a residence located at Route 1, Box 65, Lost Creek, Grant District, Harrison County, West Virginia. Wife shall be granted the exclusive right to reside in the last marital home for five (5) years, that is until December 1, 1989, or unless she sooner remarries or decides otherwise to sell the same. During the time that Wife resides in said home, she shall be liable for the homeowners insurance, maintenance, real estate taxes and all upkeep on the same. If Wife should remarry or decide not to reside in said home, said home shall be offered for sale with right of first refusal be given to either party to purchase the other's interest at its fair market price. If neither party is purchasing the entire interest of said home, said property shall be sold and the net proceeds of sale be divided evenly between the parties.

The Property Settlement and Agreement, signed by the parties, was drafted by Mr. Martin's former attorney. During the original divorce proceeding, Mrs. Martin was represented by an attorney.

■ Mr. Martin contends that the disposition of the former marital property was part of the property settlement rather than a form of alimony and is not subject to modification.[2] Recently in *Segal v. Beard,* 181 W.Va. 92, 380 S.E.2d 444 (1989), we examined the jurisdictional power of a trial court to modify an order settling the property rights of the parties to a divorce:

In a divorce action, except when the rule is altered by statute, a judgment providing for, or approving the parties' agreement as to, the property rights of the respective parties—unlike a judgment governing alimony—may not be modified or vacated after it becomes final, in the absence of fraud, coercion, mistake or other grounds on which judgments in general may be modified or vacated. 27C C.J.S. *Divorce* § 594 (1986) (collecting cases from the approximately thirty jurisdictions deciding the issue). *See also* 2 H. Clark, *The Law of Domestic Relations in the United States* §§ 19.13, at 465–66, 16.1, at 179, and 17.6, at 275 (2d ed. 1987); 4 *Family Law and Practice* §§ 52.01[3][a], 52.04[1] (A. Rutkin gen. ed. 1987); 24 Am.Jur.2d *Divorce and Separation* §§ 958, 846 (1983). Stated more concisely, "[i]n the absence of statutory authorization to

---

**2.** *See, Stillings v. Stillings,* 167 W.Va. 796, 280 S.E.2d 689 (1981) for a discussion of the right to partition for the sale of jointly owned property and the need to show compelling equitable circumstances.

modify a judgment dividing marital property, the courts [acting as domestic relations courts] are without jurisdiction to do so." *Wardwell v. Wardwell*, 458 A.2d 750, 752 (Me.1983). Moreover, this rule applies even when the circumstances of one or both of the parties have unexpectedly changed:

> [W]hether these property rights be fixed by the terms of the decree or by the terms of the contract [the property settlement agreement], the court is without power [under the domestic relations statutes] to divest these property rights because of the changed condition of the parties or the subsequent misconduct of the parties or either of them.

*Segal*, 181 W.Va. at 97, 380 S.E.2d at 449–50; *In accord Feit v. Feit*, 183 W.Va. 206, 394 S.E.2d 901 (1990).

Mr. Martin also alleges that the parties agreed to terminate Mrs. Martin's exclusive possession of the former marital home on December 1, 1989 and to sell the house with an equal division of the proceeds. Mr. Martin's former attorney testified that the December 1, 1989 deadline corresponded to certain business obligations of Mr. Martin and was intended to bring about a final property settlement.

Mrs. Martin contends that her use of the former marital home was a form of alimony and subject to modification. *W.Va. Code*, 48–2–15(b)(4) [1991], provides that

use of the marital home can be part of the payment of alimony.[3]

However, Mr. Martin, rather than Mrs. Martin, was given custody of the parties' only minor child. In addition, although the parties' daughter and grandson live with Mrs. Martin this situation is not contemplated by the statute which indicates possession is "to accommodate the rearing of minor children of the parties."

If the provision is part of the property settlement, Mrs. Martin contends that the second part of the provision gives her a right to possession as long as she lives provided she does not remarry by stating "... If Wife should remarry or decide not to reside in said home, said home shall be offered for sale...." Mrs. Martin said that she thought she could always stay at the former marital home if she did not remarry. However, Mrs. Martin testified that her daughter told her that after December 1, 1989, she would have to leave because the house was to be sold.

The circuit court found that although the sale provision was part of the parties' property settlement, the provision did not require the sale of the property after December 1, 1989. The circuit court said that to follow Mr. Martin's interpretation would "in substance ... [make] a contract of adhesion and, [the contract] should not be construed to give the Plaintiff [Mr. Martin] advantages which even his own lawyer did not spell out for him."

**3.** *W.Va.Code*, 48–2–15(b)(4) [1991], provides:

As an incident to requiring the payment of alimony or child support, the court may grant the exclusive use and occupancy of the marital home to one of the parties, together with all or a portion of the household goods, furniture and furnishings reasonably necessary for such use and occupancy. *Such use and occupancy shall be for a definite period, ending at a specific time set forth in the order, subject to modification upon the petition of either party. Except in extraordinary cases supported by specific findings set forth in the order granting relief, a grant of the exclusive use and occupancy of the marital home shall be limited to those situations where such use and occupancy is reasonably necessary to accommodate the rearing of minor children of the parties.* The court may require payments to third parties in the form of home loan installments, land contract payments, rent, payments for utility services, property taxes, insurance coverage, or other expenses or charges reasonably necessary for the use and occupancy of the marital domicile. Payments made to a third party pursuant to this subdivision for the benefit of the other party shall be deemed to be alimony, child support or installment payments for the distribution of marital property, in such proportion as the court shall direct: Provided, That if the court does not set forth in the order that a portion of such payments is to be deemed child support or installment payments for the distribution of marital property, then all such payments made pursuant to this subdivision shall be deemed to be alimony. Nothing contained in this subdivision shall abrogate an existing contract between either of the parties and a third party, or affect the rights and liabilities of either party or a third party under the terms of such contract. [Emphasis added.]

■ We agree with the circuit court's determination that the sale provision was part of the parties' property settlement. We note that the contract between the parties does not clearly require the sale of the former marital house after December 1, 1989. We also note that Mr. Martin has a new home where he lives with his second wife and step-daughter while Mrs. Martin has resided in the former marital home with the parties' adult daughter and their grandson. If the house were sold, Mrs. Martin would be unable to afford a similar house and would need additional support.

■ Because the property settlement is not clear and unambiguous, the circuit court properly admitted extraneous evidence concerning the meaning of the contract. The language of a property settlement should be construed as a contract. When an ambiguity exists in a written contract, we have allowed the use of extrinsic evidence to clarify the ambiguity. In Syllabus Point 2, *International Nickel Co. v. Commonwealth Gas Corp.*, 152 W.Va. 296, 163 S.E.2d 677 (1968), we said:

> "Extrinsic evidence may be used to aid in the construction of a contract if the matter in controversy is not clearly expressed in the contract, and in such case the intention of the parties is always important and the court may consider parol evidence in connection therewith with regard to conditions and objects relative to the matter involved...." Syl.Pt. 2, *Berkeley Co. Pub. Ser. Dist. v. Vitro Corp.*, 152 W.Va. [252], [162 S.E.2d 189 (1968)].

*See, Breedlove v. Pennzoil Co.*, 184 W.Va. 44, 399 S.E.2d 187 (1990); *Tri-State Asphalt v. McDonough Co.*, 182 W.Va. 757, 391 S.E.2d 907 (1990); *Bittorf v. Bittorf*, 182 W.Va. 594, 390 S.E.2d 793 (1989); *Glenmark Associates, Inc. v. Americare of West Virginia, Inc.*, 179 W.Va. 632, 371 S.E.2d 353 (1988). The circuit court noted that the contract did not specifically require the sale of the former marital home after December 1, 1989, provided Mrs. Martin does not remarry, and the circuit court declined to construe the contract to require such a sale.[4]

## II.

Mr. Martin also appeals the circuit court's award of an additional alimony of $150 per month to Mrs. Martin. Although Mr. Martin acknowledges that his annual salary has increased in the past five years from $15,000 to $49,000, and that he has accumulated substantial savings, Mr. Martin claims that no "uncontemplated changes of circumstances" occurred. Mr. Martin maintains that at the time of the divorce Mrs. Martin knew his business was starting to "grow."

Mrs. Martin, who has not remarried, earns $588 per month as a full-time school cook, receives food stamps and receives a contribution from her daughter to pay the water and sewage bill. The circuit court noted the disparity in the parties' post-divorce economic situations and the fact that Mrs. Martin has not remarried. The circuit court found that the parties expected Mrs. Martin to remarry based on the numerous references in the parties' property settlement and divorce order to Mrs. Martin's remarriage.

*W.Va.Code*, 48–2–15(e) [1990] provides in pertinent part:

> At any time after the entry of an order pursuant to the provisions of this section, *the court may,* upon the verified petition of either of the parties, *revise or alter such order concerning the maintenance of the parties,* or either of them, and make a new order concerning the same, issuing it forthwith, *as altered circumstances or needs of the parties may render necessary to meet the ends of justice.* [Emphasis added.][5]

---

4. Although there is some indication that the sale provision, given Mr. Martin's interpretation, is a contract of adhesion, we need not address the issue because the circuit court found the provision did not require the sale of the former marital home after December 1, 1989, provided Mrs. Martin does not remarry.

5. *W.Va.* Code, 48–2–15(e) [1990], states in its entirety:

> At any time after the entry of an order pursuant to the provisions of this section, the court may, upon the verified petition of either of the parties, revise or alter such order con-

In Syllabus Point 1, *Lambert v. Miller*, 178 W.Va. 224, 358 S.E.2d 785 (1987), we outlined the general criteria for modification of a child support order:

> A child support order may be modified only upon a substantial change of circumstances which was uncontemplated by either of the parties at the time the order was entered and upon a showing that the benefit of the child requires such modification. *W.Va.Code*, 48-2-15(e) [1986].

This Court expanded upon those factors and considerations, which the family law master or circuit court may rely upon to determine a substantial change of circumstances has occurred, in *Gardner v. Gardner*, 184 W.Va. 260, 400 S.E.2d 268 (1990). Due to the fact that divorce orders routinely fail to "anticipate changes caused by inflation or the increased needs of children as they mature[,]" and because these types of increased expenses are "difficult to predict," we recognize in *Gardner* that these economic changes as well as "unexpected changes affecting basic needs such as housing or transportation" may be treated as an uncontemplated change, which warrants modification of a child support order. *See id.* at 272–73 and Syl.Pt. 2. Although *Lambert* and *Gardner* were primarily concerned with modification of a child support order, the rationale employed in both cases requires that the same criteria be applied when modification of a maintenance order is sought.

In *Lambert*, we required that the change be uncontemplated based on the rationale that contemplated changes were already intrinsically included as a part of the parties' agreement. The determination of what the parties knew or reasonably should have known at the time of the original order is factual. *See,* Syllabus, *Luff v. Luff,* 177 W.Va. 247, 351 S.E.2d 434 (1986) (modification of alimony); Syllabus Point 2, *Yanero v. Yanero,* 171 W.Va. 88, 297 S.E.2d 863 (1982).

In the present case, the circuit court compared the economic positions of the parties. After the divorce, Mrs. Martin's finances showed no improvement in spite of her full-time job, and at the same time Mr. Martin more than tripled his income. Indeed, Mrs. Martin receives food stamps and her daughter pays the water and sewage bill while Mr. Martin accumulates substantial investments.

Based on the dramatic economic success of Mr. Martin, the poverty of Mrs. Martin, and the non-remarriage of Mrs. Martin, the circuit court found that an uncontemplated change of circumstances had occurred justifying a change in Mrs. Martin's alimony.

In Syllabus Point 8, *Wyant v. Wyant*, 184 W.Va. 434, 400 S.E.2d 869 (1990), we again restated that questions of

cerning the maintenance of the parties, or either of them, and make a new order concerning the same, issuing it forthwith, as altered circumstances or needs of the parties may render necessary to meet the ends of justice. The court may also from time to time afterward, on the verified petition of either of the parties, revise or alter such order to grant relief pursuant to subdivision (8), subsection (b) of this section, and make a new order concerning the same, issuing it forthwith, as the circumstances of the parties and the benefit of the children may require. The court may also from time to time afterward, on the verified petition of either of the parties or other proper person having actual or legal custody of the minor child or children of the parties, revise or alter such order concerning the custody and support of the children, and make a new order concerning the same, issuing it forthwith, as the circumstances of the parents or other proper person or persons and the benefit of the children may require:

Provided, That an order providing for child support payments may be revised or altered for the reason, inter alia, that the existing order provides for child support payments in an amount that is less than eighty-five percent or more than one hundred fifteen percent of the amount that would be required to be paid under the child support guidelines promulgated pursuant to the provisions of section eight, article two, chapter forty-eight-a [§ 48A-2-8] of this code. In granting relief under this subsection, the court may, where other means are not conveniently available, alter any prior order of the court with respect to the distribution of marital property, if such property is still held by the parties, and if necessary to give effect to a modification of alimony, child support or child custody or necessary to avoid an inequitable or unjust result which would be caused by the manner in which the modification will affect the prior distribution of marital property.

alimony "are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." *In accord,* Syllabus, *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977); Syllabus, *Luff v. Luff,* 174 W.Va. 734, 329 S.E.2d 100 (1985); Syllabus Point 3, *Lambert, supra.* The evidence in the record shows that Mrs. Martin needed additional alimony of $150 per month.

■ We find that the circuit court correctly determined that a substantial, uncontemplated change of circumstances had occurred and that Mrs. Martin established that she needed an additional $150 per month in alimony. We find that the circuit court did not abuse its discretion in determining the amount of alimony.

For the above-stated reasons, we affirm the decision of the Circuit Court of Harrison County.

Affirmed.

WORKMAN, Justice, concurring:
(Filed July 23, 1992)

While I agree with the result reached by the majority, they engage in unnecessary mental gymnastics in reaching their conclusion when there is a simple mechanism to do so set forth in the statute. The statutory language found in West Virginia Code § 48–2–15(b)(4) provides that "[a]s an incident to requiring the payment of alimony or child support, the court may grant the exclusive use and occupancy of the marital home to one of the parties...." The majority dismissed West Virginia Code § 48–2–15(b)(4) as authority for permitting appellee to continue residing in the former marital home based on the language in that statute that generally limits the use and occupancy of a former marital home "to those situations where such use and occupancy is reasonably necessary to accommodate the rearing of minor children of the parties." *Id.* However, that same statutory provision provides a clear exception "in extraordinary cases supported by specific findings set forth in the order granting relief...." *Id.*

The circuit court obviously found the existence of such extraordinary circumstances. These parties had been married for twenty-two years, during most of which Mrs. Martin had devoted herself to child rearing and homemaking. The most significant extraordinary circumstance, however, is that, subsequent to the divorce, appellant's business had flourished such that his income had more than tripled and permitted him to accumulate substantial investments while appellee had such nominal income from her position as a school cook that she was forced to use food stamps. Another fact which elevates this case to extraordinary within the meaning of West Virginia Code § 48–2–15(b)(4) is the residency of the parties' adult daughter and their grandchild with appellee in the former marital home. While the appellant has no legal obligation to provide shelter for his daughter, now past the age of majority, and his grandchild (despite the fact that they were in necessitous circumstances), the fact that appellee lent such assistance certainly adds to the extraordinary nature of these circumstances. This combination of factors, when viewed as a whole, does rise to the necessary level of extraordinary circumstances to permit appellee's continued residency in the former marital home "[a]s an incident to requiring the payment of alimony...." *Id.* at § 48–2–15(b)(4).

West Virginia Code § 48–2–15(b)(4) does require that the court make specific findings to support use of the exception and requires that the use of the marital home be limited to a definitive period of time. Such findings and time limitation on use were not included in the circuit court's order. Consequently, this case should have been remanded to require the court to make specific findings and to set such a time limitation.