430 S.E.2d 336

Pamela THOMPSON, Plaintiff Below, Appellant,

v.

Stephen Blackmore THOMPSON, IV, Defendant Below, Appellee.

No. 21151.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 20, 1993.

Decided April 23, 1993.

Terry D. Reed, Hymes & Coonts, Buckhannon, for appellant.

George Higinbotham, Higinbotham, Jones & Higinbotham, Fairmont, for appellee.

PER CURIAM.

Pamela Thompson appeals a final order of the Circuit Court of Marion County, dated September 10, 1991, reducing the monthly child support payments owed to her by her ex-husband, Stephen Thompson. The circuit court found that the reduction was authorized under W.Va.Code, 48–2–15(e) (1991). On appeal, Ms. Thompson argues that Mr. Thompson has waived his right to request a modification pursuant to W.Va.Code, 48A–2–8(a)(1) (1989). We agree, and, accordingly, we reverse the circuit court's final order.

I.

The parties were married nineteen years and had four children. On December 6, 1988, the Thompsons were divorced; however, the divorce order did not address the issues of child custody, child support, ali-

mony, or distribution of the marital assets. For the following five and one-half months, the Thompsons and their respective attorneys negotiated these issues. Finally, on July 26, 1989, the Thompsons entered into a settlement agreement. The circuit court incorporated this agreement in an order dated September 7, 1989.

Under the terms of the settlement, Ms. Thompson was given sole custody of the parties' three minor children. Mr. Thompson was required to pay Ms. Thompson $1800 per month child support until July 20, 1997, at which time the amount of child support owed would be reduced to $1500 per month. On July 30, 2004, all child support payments would cease. Mr. Thompson further agreed to pay all expenses relating to the college education of each of the four children. Finally, Mr. Thompson assigned one-half of his retirement benefits to his former wife. In exchange for the above considerations, Ms. Thompson conveyed her interest in the marital residence and some property in Florida to her ex-husband. She further relinquished her interest in the parties' savings account, which was valued at approximately $7000. The agreement also contained the following provision in Paragraph 16: "It is further expressly agreed and understood that this contract is forever binding upon the parties hereto, except that the same may be modified or changed by mutual agreement, in writing, by the parties hereto."

Since entry of the support order, Mr. Thompson's financial situation has significantly improved. He sold the Florida property, leased the marital residence with an option to buy, and liquidated the savings account. Moreover, Mr. Thompson had a taxable income of $66,806 in 1989, and, since then, he has received at least two pay raises of 4 percent each. Mr. Thompson also received a gift of $10,000 from his uncle.

Nonetheless, in October of 1990, Mr. Thompson petitioned the Circuit Court of

Marion County for a reduction in child support. He contended that since entry of the September, 1989, order, there had been a substantial change in his financial situation. Specifically, he argued that at the time the order was entered, he believed he would be able to sell the marital residence. Because the property had not been sold, Mr. Thompson argued that he could no longer afford the child support payments.

On February 15, 1991, and June 21, 1991, the family law master held hearings on the petition. After hearing evidence on the matter, the family law master reduced the child support award from $1800 to $924.68 per month.[1] He reasoned that the original order could be revised pursuant to W.Va. Code, 48–2–15(e), because $1800 per month was more than 15 percent in excess of the amount required under the child support guidelines.

## II.

The authority to award or modify child support in a divorce proceeding is found in W.Va.Code, 48–2–15 (1991), which states, in pertinent part:

"(e) At any time after the entry of an order pursuant to the provisions of this section, the court may, upon the verified petition of either of the parties, revise or alter such order concerning the maintenance of the parties, or either of them, and make a new order concerning the same, issuing it forthwith, *as the altered circumstances or needs of the parties may render necessary to meet the ends of justice.*" (Emphasis added).

Until 1990, the only way a party could obtain a modification of a child support award was to demonstrate that there had been an uncontemplated substantial change in circumstances and that the proposed modification would be in the child's best interests. We recognized this rule of law in Syllabus Point 1 of *Lambert v. Miller*, 178 W.Va. 224, 358 S.E.2d 785 (1987):

---

**1.** The amount that Mr. Thompson owes under the child support guidelines formula is $924.68 per month.

"A child support order may be modified only upon a substantial change of circumstances which was uncontemplated by either of the parties at the time the order was entered and upon a showing that the benefit of the child requires such modification. *W.Va.Code*, 48–2–15(e) [1986]."

*See also Clay v. Clay,* 182 W.Va. 414, 388 S.E.2d 288 (1989); *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987); *Zirkle v. Zirkle,* 172 W.Va. 211, 304 S.E.2d 664 (1983); *Douglas v. Douglas,* 171 W.Va. 162, 298 S.E.2d 135 (1982).

 "[T]he issue of whether there has been a substantial change of circumstances is essentially a factual determination." *Lambert v. Miller,* 178 W.Va. at 226, 358 S.E.2d at 787. (Citations omitted).

"Among some of the factors or circumstances considered include: a change in the financial resources or ability to pay on part of the parent obligated to pay support, needs of the child or children for whom support is paid, a good or bad faith motive of the obligated parent in sustaining a reduction of income, and the duration of the change, namely, whether the change is temporary or permanent." 178 W.Va. at 226, 358 S.E.2d at 787. (Citations omitted).

Three years later in Syllabus Point 2 of *Gardner v. Gardner,* 184 W.Va. 260, 400 S.E.2d 268 (1990), we expanded on the factors a court should consider in assessing whether a substantial change of circumstances had occurred:

"In addition to the factors or circumstances listed for consideration in *Lambert v. Miller,* 178 W.Va. 224, 358 S.E.2d 785, 787 (1987), the family law master or circuit court may determine that a substantial change in circumstances has occurred because of a change in the cost of living caused by inflation or increases in the children's needs because they are older, or unexpected changes affecting basic needs such as housing or transportation."

 After reviewing the evidence in this case, we find that Mr. Thompson has failed to demonstrate a substantial change in circumstances warranting a modification of the original child support order. In his petition for modification, Mr. Thompson readily concedes that he "consented and agreed to child support payments in the amount of $1800 per month[.]" However, he argues that he conditioned this agreement upon the "expected sale of certain assets"—i.e. the marital residence.

Although Mr. Thompson now asserts that he only agreed to the child support order because he believed he could easily sell the marital residence, the record fails to support this assertion. There is no provision in the original order indicating that the amount agreed upon was contingent upon the sale of the marital home. Moreover, all the evidence supports the conclusion that Mr. Thompson knew the property would be difficult to sell. The house had been for sale for several years prior to Mr. Thompson's divorce and had never been sold. Indeed, Mr. Thompson did not even obtain an appraisal of the value of the home before he entered into the agreement. We further find Mr. Thompson's argument unpersuasive because he made little, if any, effort to sell the house. For example, he never formally listed the house with a realtor or even placed a "For Sale" sign in the yard. Accordingly, we find Mr. Thompson's inability to sell the marital residence, especially in the absence of its sale being an express condition precedent in the original order, is not a substantial change of circumstances warranting modification.

Finally, the record does not demonstrate that Mr. Thompson's inability to sell the house has hindered his financial situation. Indeed, his financial situation has not deteriorated since entry of the divorce decree, but has significantly improved. For at least two years following the entry of the order, Mr. Thompson received a 4 percent pay raise. He was able to sell the property in Florida and lease the marital residence, thus improving his cash flow and lowering his debt. Finally, he received a $10,000 gift from his uncle.

## II.

 In 1990, the legislature amended W.Va.Code, 48–2–15(e), to allow for revi-

sion of a child support order if the amount ordered was not within 15 percent of the amount required to be paid under the child support guidelines formula. This amendment states, in part:

"That an order providing for child support payments may be revised or altered for the reason, inter alia, that the existing order provides for child support payments in an amount that is less than eighty-five percent or more than one hundred fifteen percent of the amount that would be required to be paid under the child support guidelines promulgated pursuant to the provisions of section eight [§ 48A-2-8], article two, chapter forty-eight-a of this code."

■ We acknowledged this legislative change in *Gardner v. Gardner, supra,* and then fashioned the following rule in Syllabus Point 1:

"For cases arising before July 1, 1990, a party seeking a modification of a child support order must show that the welfare of the child or children requires the modification and that a substantial change of circumstances occurred after the entry of the existing order that was not adequately dealt with in that order. For cases arising after July 1, 1990, a party seeking a modification of a child support order must either meet the criteria outlined above or show that the support award is not within 15% of the child support guidelines adopted pursuant to *W.Va.Code,* 48A-2-8 [1989]."

In this case, the family law master modified the child support order because the amount owed by Mr. Thompson was 15 percent more than he would have been required to pay under the guidelines formula. Apparently, the family law master believed that the amendment applied to any petition for modification filed after the July

1, 1990, date. On appeal, Ms. Thompson argues that the amendment only applies to original support orders entered after July 1, 1990.

■ Even if the family law master were correct, we would hold that Mr. Thompson waived his right to request a modification pursuant to W.Va.Code, 48A-2-8(a)(1) (1989), which states, in pertinent part:

"The guidelines shall not be followed:

"(1) When the child support award proposed to be made pursuant to the guidelines has been disclosed to the parties and each party has made a knowing and intelligent waiver of said amount, and the support obligors have entered into an agreement which provides for the custody and support of the child or children of the parties[.]" [2]

■ In Syllabus Point 3 of *Gardner v. Gardner, supra,* we recognized that a party could waive application of the child support guidelines under this amendment:

"Once a family law master or circuit court finds that a party has shown a change of circumstances justifying modification of child support, the amount of child support shall be in accordance with the child support guidelines established pursuant to *W.Va.Code,* 48A-2-8(a) [1989], *unless the family law master or the court shall determine, in a written finding or a specific finding on the record, that the application of the guidelines would be either unjust, inappropriate, waived by the parties pursuant to the safeguards outlined in W.Va.Code, 48A-2-8(a)(1) [1989], or contrary to the best interests of the children or the parties."* (Emphasis added).

*See also Wyatt v. Wyatt,* 185 W.Va. 472, 408 S.E.2d 51 (1991); *Wood v. Wood,* 184 W.Va. 744, 403 S.E.2d 761 (1991).

---

**2.** This provision essentially codifies our holding in Syllabus Point 2 of *Grijalva v. Grijalva,* 172 W.Va. 676, 310 S.E.2d 193 (1983): "If explicit contractual provisions in a divorce settlement bar modification of all its provisions, both parents are estopped from seeking modification of an agreed-to child support award except when the reason for seeking such modification directly concerns the welfare of the child." *See also Martin v. Martin,* 176 W.Va. 542, 346 S.E.2d 61 (1986); *In re Estate of Hereford,* 162 W.Va. 477, 250 S.E.2d 45 (1978).

Here, the parties expressly agreed in the child support order that "this contract is forever binding upon the parties hereto, except that the same may be modified or changed by mutual agreement, in writing, by the parties hereto." In the hearing on February 15, 1991, Mr. Thompson admitted that he had been advised of the child support guidelines and that he had knowingly and intelligently waived them.[3] Moreover, he admitted that (1) he had been represented by counsel during negotiations of the contract; (2) he was satisfied with the representation that he received; (3) he voluntarily signed the agreement; (4) he understood the agreement, and, finally, (5) he was not coerced into signing the document.

### III.

Under the facts presented in this case, we believe that Mr. Thompson expressly made a knowing and intelligent waiver to have the child support guidelines apply, and, therefore, he has waived any right to further modification under them. Accordingly, we reverse the September 10, 1991, order of the Circuit Court of Marion County.

Reversed.

---

**3.** Specifically, Mr. Thompson testified as follows:

> "Q. Now, with respect to the property settlement agreement, you were aware when you signed that as to the amount of child support you were agreeing to pay, were you not?
> "A. Yes, sir.
> "Q. And you, likewise, were aware that that very well would be in excess of that which would be required if you let a judge or the judiciary set that amount, were you not?
> "A. Yes sir.
> "Q. You were aware that they had guidelines that they followed and that those guidelines may very well be less than what you agreed to?

> "A. Yes sir.
> "LAW MASTER: Do you recall what the guidelines amount was?
> "WITNESS: No, sir.
> "LAW MASTER: Okay. Go ahead.
> "MR. REED: But in spite of that you elected to rather than proceed with what the guidelines were and letting the Court set it, you elected to sign the property settlement agreement?
> "A. Yes, sir.
> "Q. And to the extent that what is required to be paid under the property settlement agreement exceeds the guidelines, you agreed to it, is that correct?
> "A. Yes, sir."