390 S.E.2d 793

**Norman G. BITTORF**

v.

**Cleta M. BITTORF**

**No. 19017.**

Supreme Court of Appeals of
West Virginia.

Dec. 20, 1989.

J. David Judy, III, Judy & Judy, Moore-field, for Cleta M. Bittorf.

John G. Ours, Petersburg, for Norman
G. Bittorf.

**PER CURIAM:**

The appellant, Cleta M. Bittorf, appeals an order of the Circuit Court of Grant County dated September 17, 1988, affirming the family law master's recommended modification of a property settlement and child custody agreement entered into by the appellant and the appellee, Norman G. Bittorf. We find that the periodic payments contained in the property settlement agreement were basically an equitable distribution of property which rested primarily on Mr. Bittorf's vested military pension. Accordingly, we reverse the decision of the circuit court.

The parties entered into the property settlement agreement on January 30, 1986.

Pursuant to that agreement, Mr. Bittorf agreed to pay Mrs. Bittorf the amount of $1,100 per month during her lifetime. The agreement provided "that in determining the amount of alimony payments the parties have taken into consideration the financial condition of the parties, equitable distribution of property rights, homemaker services, and all rights the WIFE may have in and to the HUSBAND'S retirement income." By order entered on April 22, 1986, the trial judge granted the parties a divorce and found that the property settlement agreement addressed "the property rights, equitable distribution, homemaker services, and other issues between the parties."

On February 23, 1988, Mr. Bittorf filed a petition requesting that the circuit court modify the property settlement agreement by eliminating or reducing the amount of alimony to be paid by him to his former wife. A hearing was conducted on April 15, 1988, and by order dated May 11, 1988, the family law master found that the monthly payments provided for in the agreement were alimony and subject to modification. The family law master recommended that Mr. Bittorf's alimony payments to Mrs. Bittorf be reduced from $1,100 to $850 per month. By order entered September 17, 1988, the circuit court affirmed the recommendation of the family law master and ordered the monthly payments to be reduced to $850. Mrs. Bittorf appealed.

The question before this Court on appeal is whether the periodic payments provided for in the property settlement agreement are alimony. Mr. Bittorf asserts that they are, and are, therefore, subject to the con-

tinuing jurisdiction of the court. Mrs. Bittorf argues that these payments are part of the equitable distribution of property under the settlement agreement. Both parties cite *In re Estate of Hereford*, 162 W.Va. 477, 250 S.E.2d 45 (1978), in support of their arguments.

Our chief concern in *Hereford* was abolishing linguistic distinctions which had previously been determinative of whether periodic payments in a property settlement agreement approved by a circuit court in a final divorce decree could be judicially enforced. We held in Syllabus Point 5 that, in the absence of some express language in the property settlement agreement, such periodic payments were judicially enforceable and subject to modification by the court.[1]

■ We did not have occasion in *Hereford* to discuss the concept of equitable distribution, or, in particular, the statutory scheme of W.Va.Code, 48–2–32 (1984). In *Butcher v. Butcher*, 178 W.Va. 33, 357 S.E.2d 226 (1987), we recognized that W.Va.Code, 48–2–16(b)(5) (1984),[2] provides a link between the equitable distribution of marital property and the amount received for alimony and child support, which we summarized in Syllabus Point 3:

"Before an award of alimony or child support is made, a court should first determine the amount of marital assets and the division thereof between the parties. The reason for this rule is that in the division of marital property a spouse may receive income-producing property and this will have some bearing on the

---

1. Syllabus Point 5 of *Hereford* provides:
"In all domestic relations cases where the final order is entered after 1 February 1979 there shall be no special legal effect in the divorce decree attached to the words 'merged,' 'ratified,' 'confirmed,' 'approved,' 'incorporated,' etc., and where the parties and the court wish to do something other than award judicially decreed periodic payments for alimony or alimony and child support enforceable by contempt and subject to modification by the court, the parties must expressly set forth the different terms to which they agree and the court must expressly indicate his approval of their agreement."

2. W.Va.Code, 48–2–16(b), provides factors that a court should consider in setting alimony and child support, among which is:

"(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two [§ 48–2–32] of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance[.]"

need for alimony or child support as stated in W.Va.Code, 48–2–16(b)(5) (1984)."

It is apparent from *Butcher* that after our equitable distribution statute was enacted in 1984, the line between periodic payments which are purely for alimony and child support and those that constitute an equitable distribution of property has become blurred. Courts have traditionally had difficulty in determining precisely what periodic payments represent and have evolved a rule that the party's label will not necessarily control. *See, e.g., Greer v. Greer,* 32 Colo.App. 196, 510 P.2d 905 (1973); *Seablom v. Seablom,* 348 N.W.2d 920 (N.D.1984); *Matter of Marriage of Moak,* 64 Or.App. 487, 668 P.2d 1249 (1983); *Thompson v. Thompson,* 82 Wash.2d 352, 510 P.2d 827 (1973).

■ The property settlement agreement in this case is in the nature of a contract with regard to how its language is to be construed. When an ambiguity exists in a written contract, this Court has recognized that extrinsic evidence could be used to clarify ambiguity, as stated in Syllabus Point 2 of *International Nickel Co. v. Commonwealth Gas Corp.,* 152 W.Va. 296, 163 S.E.2d 677 (1968):

" 'Extrinsic evidence may be used to aid in the construction of a contract if the matter in controversy is not clearly expressed in the contract, and in such case the intention of the parties is always important and the court may consider parol evidence in connection therewith with regard to conditions and objects relative to the matter involved....' Syl.Pt. 2, *Berkeley Co. Pub. Ser. Dist. v. Vitro*

*Corp.,* 152 W.Va. [252], [162 S.E.2d 189 (1968) ]."

*See also Glenmark Associates, Inc. v. Americare of W. Va., Inc.,* 179 W.Va. 632, 371 S.E.2d 353 (1988); *Holiday Plaza, Inc. v. First Fed. Sav. & Loan Ass'n of Clarksburg,* 168 W.Va. 356, 285 S.E.2d 131 (1981). This was the approach taken by the trial court.

■ Here, there is an ambiguity in the written contract as to whether the periodic payments were intended to be alimony or part of the parties' division of property. Although the payments are designated "alimony," they have the character of a division of property. The agreement expressly states that Mr. Bittorf is to pay Mrs. Bittorf an amount of $1,100 per month during her lifetime. There is no provision that these payments are to terminate upon Mrs. Bittorf's remarriage.[3] The agreement provides that this amount is based on a consideration of the parties' financial circumstances, equitable distribution, homemaker services, and Mrs. Bittorf's interest in Mr. Bittorf's retirement income. Since the distinction between spousal support and property division in the agreement is unclear, we must look to the underlying facts of this case to determine whether these payments are alimony or a property division.[4]

Both parties testified at the hearing on April 15, 1988, that the periodic payments were set at $1,100 per month to reflect Mrs. Bittorf's share of Mr. Bittorf's monthly military retirement payment at the time of the divorce. Mr. Bittorf had been a lieutenant colonel in the United States Air Force and had retired after a twenty-six year career with a pension benefit of approximately $2,400 per month.[5] The par-

---

**3.** Absence of a provision for termination upon the remarriage of the obligee is one factor which indicates a division of property. *See Redlin v. Redlin,* 436 N.W.2d 5 (N.D.1989); *Greer v. Greer, supra; Duncan v. Duncan,* 239 Ga. 789, 238 S.E.2d 902 (1977).

**4.** There was no dispute over the other provisions of the settlement agreement. Under the agreement, Mrs. Bittorf transferred to Mr. Bittorf her interest in the couple's jointly held property situate in Grant County, and Mr. Bittorf transferred to Mrs. Bittorf his interest in the marital residence. Mrs. Bittorf agreed to assume the obligation of a loan for which the

house serves as security and also to pay Mr. Bittorf $5,000 for his equity in the house. Mrs. Bittorf also assumed the obligation for a loan secured by the parties' automobile. In addition, Mr. Bittorf agreed to transfer two life insurance policies to Mrs. Bittorf, and she agreed to assume all premium payments. Mr. Bittorf also agreed to maintain military dependency identification cards for Mrs. Bittorf and their son.

**5.** Mr. Bittorf became a member of the United States Air Force on August 12, 1955, and entered into a stipulation of the facts which prompted his court martial on June 9, 1981. From this

ties were married throughout Mr. Bittorf's military career. It is not disputed that Mrs. Bittorf had a property interest in her husband's military retirement benefits.[6]

In addition, the record contains a letter dated June 21, 1988, in which the attorney who prepared the agreement stated that the parties had agreed that Mr. Bittorf would pay Mrs. Bittorf one half of his retirement pay each month and that this payment was to reimburse Mrs. Bittorf for homemaker services and for property rights in Mr. Bittorf's retirement. The attorney explained that Mr. Bittorf had requested that this amount be referred to as alimony for tax purposes. Mrs. Bittorf agreed, but requested "that some phraseology be added showing that it was also for her equitable distribution, etc."

The order of the circuit court granting the divorce and approving the agreement states that "[t]he Court has carefully viewed the contents of the Property Settlement and Child Custody Agreement and finds that the same does address the property rights, equitable distribution, homemaker services, and other issues between the parties." The circuit court found that the agreement was "fair and equitable" and specifically ordered that Mr. Bittorf pay Mrs. Bittorf "the sum of $1,100 per month as alimony for her support and maintenance" during her lifetime. There is no language in the final order requiring the monthly payments to terminate upon Mrs. Bittorf's remarriage.

We find from the particular facts in the record before us that the periodic payments contained in the property settlement agreement were basically an equitable distribution of property, which rested primarily on Mr. Bittorf's vested military pension. The trial court erred in concluding that it was alimony and, therefore, subject to being modified.[7]

Accordingly, the order of the Circuit Court of Grant County is reversed.

Reversed.

---

evidence, we have concluded that Mr. Bittorf's military career lasted for twenty-six years.

6. Military nondisability retirement benefits are subject to alimony and child support payments under W.Va.Code, 48–2–15(j), and are marital property subject to division under W.Va.Code, 48–2–32(j). *See Butcher v. Butcher,* 178 W.Va. 33, 357 S.E.2d 226 (1987).

7. W.Va.Code, 48–2–15(e), provides:

"At any time after the entry of an order pursuant to the provisions of this section, the court may, upon the verified petition of either of the parties, *revise or alter such order concerning the maintenance of the parties, or either of them,* and make a new order concerning the same, as the altered circumstances or needs of the parties may render necessary to meet the ends of justice; and the court may also from time to time afterward, on the verified petition of either of the parties or other proper person having actual or legal custody of the minor child or children of the parties, *revise or alter such order concerning the custody and maintenance of the children,* and made a new order concerning the same, as the circumstances of the parents or other proper person or persons and the benefit of the children may require. *In granting such relief,* the court may, where other means are not conveniently available, alter any prior order of the court with respect to the distribution of marital property, if such property is still held by the parties, and if necessary to give effect to a modification of alimony, child support or child custody or necessary to avoid an inequitable or unjust result which would be caused by the manner in which the modification will affect the prior distribution of marital property." (Emphasis added).

In Syllabus Point 2 of *Segal v. Beard,* 181 W.Va. 92, 380 S.E.2d 444 (1989), we recognized: "A circuit court lacks jurisdiction under W.Va. Code, 48–2–15(e) [1986] to modify a divorce decree when the modification proceeding does not involve alimony, child support or child custody."