416 S.E.2d 486

**Virginia Ann SLY (Topping), Plaintiff Below, Appellant,**

v.

**James Howard SLY, Defendant Below, Appellee.**

**No. 20167.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 1992.

Decided April 3, 1992.

Sidney H. Bell, Welch, for appellant.

David M. Katz, Bluefield, for appellee.

McHUGH, Chief Justice:

This case is before this Court upon the appeal of Virginia Ann Sly (now "Mrs. Topping") from an order of the Circuit Court of McDowell County which reduced the child support obligations of her former husband, James Howard Sly, and relieved him of one-half of the monthly house payments he was required to make on the parties' jointly-owned residence. Mrs. Topping asserts that Mr. Sly should be required to make the full monthly house payment as part of the equitable distribution of their marital assets and that the amount of child support to be paid by Mr. Sly should be

1. For ease of reference, the principal orders entered by the circuit court in this case and the payments required thereunder are as follows:

| Date of Order | Alimony | Child Support | House Payment |
|---|---|---|---|
| 3/19/87 | $50 | $500.00 | $421.40 |
| 9/2/88 | | $337.50 | $140.46 |
| 8/16/90 | | $400.00 | $210.70 (plus half of insurance and taxes) |

Under the child support guidelines, the circuit court, in its August 16, 1990 order, calculated Mr. Sly's monthly child support obligation to be $503.97. The circuit court, however, ordered Mr. Sly to pay only $400.00 per month in child support in order to give him credit against his support obligation for also paying $210.70 of the

calculated in accordance with the established state guidelines set forth in 6 *W. Va. Code of State Rules*, §§ 78–16–1 to 78–16–20 (1988).

## I

The factual summary of this case consists primarily of a lengthy procedural history involving several petitions filed on behalf of both parties seeking various modifications of the child support and house payment obligations under the final divorce decree.

By order entered on March 19, 1987,[1] the circuit court granted the parties a divorce on the grounds of irreconcilable differences. The circuit court further ordered, among other things, that Mr. Sly pay the parties' monthly house payment on the marital domicile in the amount of $421.40, and that Mrs. Topping be awarded exclusive use of that domicile until the parties' daughter becomes 18 years of age. The circuit court also directed Mr. Sly to pay monthly child support in the amount of $500.00 and monthly alimony in the amount of $50.00.

Mr. Sly subsequently filed a petition to modify the divorce decree on May 17, 1988. Among the requests in his petition, Mr. Sly sought to eliminate the alimony payment because of the remarriage of Mrs. Topping, to reduce the child support payments, and to require Mrs. Topping to pay the monthly house payments. The family law master then recommended that the alimony payment be eliminated, that child support be reduced from $500.00 to $337.50, and that Mr. Sly only be required to pay one-third of

house payment, half of the insurance and half of the taxes. So, under the circuit court's order of August 16, 1990, Mr. Sly pays a total monthly amount of $610.70, plus half of the insurance and taxes. (The circuit court entered an order on November 16, 1990, *nunc pro tunc* the 16th

the monthly house payment in the amount of $140.46. The circuit court adopted the family law master's recommendations by order entered on September 2, 1988.

Approximately seven months later, Mrs. Topping filed a petition seeking to increase the amount of child support on the ground that circumstances had changed justifying modification. Mrs. Topping alleged that her new husband had become unemployed since the order modifying the decree had been entered, that Mr. Sly had remarried a woman who was gainfully employed, and that Mrs. Topping had never received any interest in Mr. Sly's retirement as part of the equitable distribution of the parties' assets.

Following a hearing on the petition, the family law master submitted a report recommending that Mr. Sly pay child support in the amount of $662.47 per month pursuant to *W.Va.Code*, 48A–2–8 [1989] and 6 *W.Va.Code of State Rules* §§ 78–16–1 to 78–16–20 (1988). The circuit court, recognizing that no exceptions to the recommendation had been filed by either party within the time period prescribed, adopted the family law master's recommendation by order entered on January 22, 1990. Apparently, however, the order was rescinded after it was signed.

Mr. Sly filed a petition to review the family law master's recommendation on January 22, 1990. Mrs. Topping then filed a petition to vacate the circuit court order entered on September 2, 1988, modifying the original divorce decree, on the ground that the circuit court lacked subject matter jurisdiction for entering that order. In her memorandum in support of the petition to vacate, Mrs. Topping also contended that Mr. Sly could not petition the court to review the family law master's recommended decision subsequent to the expiration of the statutorily-defined ten-day time limit. In his response and counterpetition, Mr. Sly asserted that his obligation to pay the mortgage payment should be terminat-

ed because it represented alimony under *W.Va.Code*, 48–2–15(b)(4) [1991], and that the child support established in the September 2, 1988 order should be reinstated.

The circuit court filed a memorandum opinion on August 16, 1990, wherein it determined that the child support formula furnished to the family law master was erroneous and that the order prepared by counsel on behalf of Mrs. Topping did not completely follow the family law master's recommendations.[2] The circuit court then calculated the appropriate child support by incorporating the corrections into the formula. The circuit court ordered that the amount of $503.97 in child support be paid from the date of the family law master's recommendations to the date of the court's memorandum. The circuit court further ordered that future child support payments from the date of the memorandum would be $400.00, in order to give Mr. Sly credit against his support obligation for paying half of the loan payments on the home, half of the insurance, and half of the taxes. The court found that the parties' child was benefitting from the use of the home and the cost thereof, and that Mr. Sly should be receiving some credit toward his daughter's support.

By letter dated October 24, 1990, the circuit court, after being advised that Mrs. Topping refused to sign the certificate authorizing Mr. Sly to claim their child as a tax exemption, directed her to execute the waiver required by the Internal Revenue Service in accordance with this Court's decision in *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987).

The circuit court subsequently entered an order on November 16, 1990, *nunc pro tunc* the 16th day of August, 1990, incorporating its findings and conclusions from its memorandum opinion dated August 16, 1990, and its ruling regarding the tax exemption set forth in its letter dated October 24, 1990. It is from that order that Mrs. Topping now appeals.

---

day of August, 1990, incorporating its findings and conclusions from its memorandum opinion dated August 16, 1990).

2. Mrs. Topping concedes that the family law master and her previous attorney incorrectly calculated the child support under the guidelines.

## II

The first issue we shall address in this appeal is whether Mr. Sly's obligation to pay the monthly house payment was deemed to be an alimony payment under the provisions of *W. Va. Code*, 48–2–15(b)(4) [1991], because the circuit court did not state in its order that a portion of such payments were deemed to be child support or installment payments for the distribution of marital property. Mrs. Topping contends that it was the intent of the parties to make the house payment obligation part of the equitable distribution of their marital assets, and that the circuit court did not have jurisdiction to modify those payments.[3] Mr. Sly maintains that at least half of the house payment was intended as child support and that none of those payments were part of the equitable distribution of their marital property. Mr. Sly asserts that the circuit court had jurisdiction under *W. Va. Code*, 48–2–15(b)(4) [1991] to modify the order directing those payments.

*W. Va. Code*, 48–2–15(b)(4) [1991] addresses, among other payments to third parties, the payment of home loan installments for the use and occupancy of the marital home for the rearing of the parties' minor children pursuant to a divorce decree. *W. Va. Code*, 48–2–15(b)(4) [1991] provides, in relevant part:

> The court may require payments to third parties in the form of home loan installments, land contract payments, rent, payments for utility services, property taxes, insurance coverage, or other expenses or charges reasonably necessary for the use and occupancy of the marital domicile. Payments made to a third party pursuant to this subdivision for the benefit of the other party shall be deemed to be alimony, child support or installment payments for the distribution of marital property, ... Provided, That if the court does not set forth in the order that a portion of such payments is to be deemed child support or installment payments for the distribution of marital property, then all such payments ... shall be deemed to be alimony.

This Court has traditionally recognized that when a statute is clear and unambiguous, the courts will not construe but apply the statute, as we stated in syllabus point 2 of *State ex rel. Underwood v. Silverstein*, 167 W.Va. 121, 278 S.E.2d 886 (1981): " 'Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)."

Although the language of *W. Va. Code*, 48–2–15(b)(4) [1991] is clear, the application of that statute to the particular facts of this case is not a simple task. The final divorce decree does not specifically designate whether the house payments are alimony, child support or installment payments for the distribution of martial property. Yet, it appears from both the special commissioner's recommendation and the circuit court's final divorce decree that

---

**3.** Mrs. Topping relies on *Bittorf v. Bittorf*, 182 W.Va. 594, 390 S.E.2d 793 (1989) in support of her argument that the monthly house payments were intended to be part of the equitable distribution of the parties' marital property. *Bittorf*, however, is distinguishable from the case before us. The husband in *Bittorf* was making monthly payments to his former wife in the sum of $1,100.00, which equaled one-half of his monthly military pension income. There was an ambiguity in the property settlement agreement and extrinsic evidence was allowed to clarify the ambiguity. Although these payments were designated as alimony in the property settlement agreement between the parties, both parties testified that these payments were set at that amount to reflect the wife's interest in her husband's military pension. Furthermore, a letter was introduced into evidence from the attorney who prepared the property settlement agreement stating that the husband would pay the wife the monthly sums to reimburse her for homemaker services and for her property rights in the military pension, and that the husband had asked that the payments be designated as alimony for tax purposes. We found that the circuit court did not have jurisdiction to modify those payments because they represented the wife's share of her husband's military pension as part of the equitable distribution of property.

Here, the monthly payments were home loan installments payable to a bank which were to terminate once the parties' daughter reached the age of eighteen, at which time the property will be sold and the proceeds divided, or one party purchases the other party's interest.

these payments, or at least half of them, were indeed set up to serve as child support. First, it is clear from his recommendation that the special commissioner intended half of the house payment to represent child support. The special commissioner's recommendation provided that

> [i]n the event plaintiff should re-marry during the infancy of Myra Anne Sly, and should desire to continue to reside in said dwelling house, Your Commissioner (noting that the letter does not make provision for the same) recommends that defendant be obligated to pay only one-half (½) of the monthly installments payable on the obligation to the Bank of Iaeger[.]

While the circuit court did not incorporate the above language in the final divorce decree, it did provide that Mrs. Topping's "exclusive possession and use of said marital home shall terminate when the parties' child becomes 18 years of age, at which time the home shall be sold[.]"[4] The circuit court did not include any provision which would have had Mrs. Topping's exclusive use and possession of the marital home or Mr. Sly's house payment obligation terminate upon her remarriage. Such language would have indicated that the house payment was intended to be alimony.[5]

This Court, on several occasions, has pointed out the benefits of awarding exclusive use of the marital home to the custodial parent to facilitate the rearing of the divorcing parties' minor children. We have recognized that the children benefit psychologically by remaining in their family home and avoiding the traumatic effects of being displaced. *Blevins v. Shelton*, 181 W.Va. 544, 547–548, 383 S.E.2d 509, 512–13 (1989); *Fischer v. Fischer*, 175 W.Va. 753, 755, 338 S.E.2d 233, 235 (1985). We have also observed that one of the primary purposes of using the marital domicile as the home for the custodial parent and the minor children is to diminish the monetary payments necessary for their shelter. *Stillings v. Stillings*, 167 W.Va. 796, 801, 280 S.E.2d 689, 692 (1981). Thus, by allowing the custodial parent and the minor children to remain in the family home, the minor children benefit from a more stable living environment until they reach majority, and the parents benefit from the reduction in costs of providing shelter for their minor children.

In the present case, it clearly appears from the record that the circuit court intended to use the family home to provide the parties' minor child with shelter and to serve as child support. The terms of the final divorce decree, while failing to specifically denominate the house payments as alimony, child support or installment payments for the distribution of marital property, strongly suggests that the house payment, or at least half of it, represents child support.[6] Thus, the house payment provision, as set forth by the circuit court in the final divorce decree, is deemed to be child support.

█ Child support is subject to the continuing jurisdiction of the circuit court, *Segal v. Beard*, 181 W.Va. 92, 97, 380 S.E.2d 444, 449 (1989), and therefore, the circuit court had jurisdiction to modify the child support award. The circuit court recognized, in its August 16, 1990 order, that *W.Va.Code*, 48–2–15(b)(4) [1991] requires the circuit court, upon ordering a divorce, to specifically designate what the house payments are for, and that the statute also requires such payments to be deemed alimony when the court fails to do so. The

---

4. We recognized in syllabus point 2 of *McKinney v. McKinney*, 175 W.Va. 640, 337 S.E.2d 9 (1985) that "[e]xcept in extraordinary cases, the right to the exclusive use and occupancy of the marital home terminates when such use and occupancy is no longer necessary to accommodate the rearing of minor children. *W.Va.Code*, 48–2–15(b)(4) [1984]." *See Blevins v. Shelton*, 181 W.Va. 544, 547 n. 6, 383 S.E.2d 509, 512 n. 6 (1989).

5. We point out that the final divorce decree specifically provided that the $50.00 monthly alimony payment to Mrs. Topping would cease upon her remarriage or her daughter reaching the age of 18, whichever came first.

6. There is no evidence in the record before us indicating that the house payment was part of the equitable distribution of marital property. No transcripts of any of the hearings were designated as part of the record on appeal.

circuit court, however, was correct when it ultimately treated the house payments as child support after recognizing that Mr. Sly's minor child was benefitting from the use of the family home and the cost thereof. The circuit court found in its November 16, 1990 order that Mr. Sly's obligation to pay*one-half of the house payments on the family home where his minor child resides "is an incident of child support." We agree with the circuit court that Mr. Sly's obligation to pay one-half of the house payments on the family home is for the benefit of his minor child. Thus, upon review of the record before us, we conclude that the circuit court did not abuse its discretion in determining that Mr. Sly's monthly house payment obligation should be increased from $140.46 to $210.70 as an incident to child support.[7]

■ In summary, we conclude that *W. Va. Code,* 48-2-15(b)(4) [1991] provides that if the circuit court, upon ordering a divorce, requires payments to third parties in the form of home loan installments, land contract payments, rent, payments for utility services, property taxes, insurance coverage, or other expenses reasonably necessary for the use and occupancy of the marital domicile, those payments shall be deemed to be alimony, child support or installment payments for the distribution of marital property in such proportion as the circuit court may direct. *W. Va. Code,* 48-2-15(b)(4) [1991] further provides that if the circuit court does not set forth in the order that a portion of such payments are deemed to be child support or installment payments for the distribution of marital property, then all such payments shall be deemed to be alimony. However, where the circuit court, though not specifically using the term "child support," sets up a house payment provision in the final divorce decree to serve as child support for the minor child or children of the divorcing parties, such a provision shall be deemed to be child support under *W. Va. Code,* 48-2-15(b)(4) [1991].

### III

■ Mrs. Topping next asserts that the circuit court erred in declining to follow the child support guidelines without setting forth, in writing, the specific reasons for not following those guidelines.[8] Mr. Sly contends that the circuit court properly reduced his child support payment under the guidelines because he is entitled to credit against his child support obligation for the house payments he is making for the benefit of his daughter.

■ The child support guidelines must be considered in every case involving child support. *Moss v. Bonnell,* 186 W.Va. 301, 304, 412 S.E.2d 495, 498 (1991); *Wood v. Wood,* 184 W.Va. 744, 748, 403 S.E.2d 761, 765 (1991). A party seeking to modify a child support order, after July 1, 1990, bears the burden of showing that either the child support award is not within 15% of the child support guidelines adopted pursuant to *W. Va. Code,* 48A-2-8 [1989] or that a substantial change in circumstances occurred after the entry of the existing order. Syl. pt. 1, in part, *Gardner v. Gardner,* 184 W.Va. 260, 400 S.E.2d 268 (1990).[9]

■ There is a rebuttable presumption that the amount of child support which would result from the application of the child support guidelines is the correct amount of support to be awarded. *Holley v. Holley,* 181 W.Va. 396, 398, 382 S.E.2d 590, 592 (1989). The guidelines are to be followed by the family law master and the circuit court unless the master or the court sets forth, in writing, the specific reasons

---

7. We note that the house payment inures to the benefit of both parties by increasing their equity in the marital domicile.

8. Mrs. Topping also argues in this appeal that the circuit court could not reduce the child support payments in its September 2, 1988 order because there had been no showing of a substantial change in circumstances other than her remarriage. Yet, Mrs. Topping never appealed the September 2, 1988 order to this Court. Thus, we decline to address this assignment of error in the present case.

9. The factors which may be considered by the family law master and the circuit court in determining whether a substantial change in circumstances has occurred are outlined in *Gardner,* 184 W.Va. at 263-65, 400 S.E.2d at 271-73.

for disregarding the guidelines, as we first explained in the syllabus of *Holley:*

> When a family law master or a circuit court enters an order awarding or modifying child support, the amount of the child support shall be in accordance with the established state guidelines, set forth in 6 *W.Va. Code of State Rules* §§ 78–16–1 to 78–16–20 (1988), unless the master or the court sets forth, in writing, specific reasons for not following the guidelines in the particular case involved. *W.Va. Code,* 48A–2–8(a), as amended.

The written findings of the family law master or the circuit court must show that "the application of the guidelines would be either unjust, inappropriate, waived by the parties pursuant to the safeguards outlined in *W.Va. Code,* 48A–2–8(a)(1) [1989], or contrary to the best interests of the children or the parties." Syl. pt. 3, in part, *Gardner, supra.*

Furthermore, this Court requires that the family law master and the circuit court include their worksheets calculating the child support award as part of the record on appeal, as we explained in syllabus point 2 of *Wyant v. Wyant,* 184 W.Va. 434, 400 S.E.2d 869 (1990):

> In order to facilitate appellate review of child support recommendations or orders, family law masters and/or circuit court judges must include as part of the record the worksheets reflecting the actual calculations which result from the application of the child support guidelines to the facts of a particular case.[10]

In the case now before us, the family law master calculated the monthly child support under the guidelines to be $662.47. The circuit court subsequently entered an order adopting the child support recommended but then rescinded that order the same day. Mr. Sly's petition for review was also filed that day.

The circuit court later filed a memorandum finding that a proposed order was not included with the master's recommended decision as required by *W.Va. Code,* 48A–4–4(d) [1990], that Mr. Sly had not filed exceptions within ten days as required by *W.Va. Code,* 48A–4–7 [1990], that the order prepared by counsel on behalf of Mrs. Topping did not follow the master's recommendations and that the child support formula furnished to the master was erroneous.[11] The circuit court then calculated the child support under the guidelines to be $503.97 and ordered that amount to be paid from the date of the recommended decision to the date of the memorandum. The circuit court further ordered that all future child support payments should be in the amount of $400.00 to take into account that Mr. Sly was paying one-half of the house payments, taxes and insurance on the marital domicile for the benefit of his daughter.

The child support guidelines established by legislative rule in this state specifically address when a support obligor can be given credit for the payment of home loan installments against the support obligor's

---

10. Mrs. Topping has alleged that the circuit court's worksheets were not included in the record. Mr. Sly maintains that the circuit court sent copies of its calculations to the parties with its memorandum order, and a copy of those calculations was subsequently filed by Mr. Sly as an attachment to his memorandum of law and made part of the record.

11. Mrs. Topping also asserts in this appeal that Mr. Sly could not petition the circuit court to review the family law master's recommendation filed on November 2, 1989, after the expiration of the statutorily-defined ten-day time limit for filing exceptions under *W.Va. Code,* 48A–4–7(a) [1990]. Mr. Sly contends that under Rule 60(b) of the *West Virginia Rules of Civil Procedure,* the circuit court could relieve him from the final

judgment for mistake, inadvertence and excusable neglect. We recognized in *Segal v. Beard,* 181 W.Va. at 98–99, 380 S.E.2d at 450–51 (1989) that "[t]he appropriate procedure for obtaining postjudgment relief from a decree dividing marital property is a motion, addressed to the general equity jurisdiction of the circuit court, for relief from judgment, pursuant to *W.Va.R.Civ.P.* 60(b)."

Here, the family law master miscalculated the amount of child support under the guidelines and it was within the court's equity jurisdiction to correct the errors in the family law master's recommendation. We further note that the family law master's recommendation was never finally adopted by the circuit court because the circuit court rescinded its order after it was signed.

total monthly support obligation. Under 6 *W.Va.Code of State Rules* § 78–16–2 (1988):

>2.9.4. Payments to third parties in the form of home loan installments, land contract payments, rent, payments for utility services, property taxes, insurance coverage, or other expenses or charges reasonably necessary for maintenance of a residence for the support obligor's children, to the extent that such payments have been specifically denominated as child support by a court order or a valid separation agreement, shall, if actually paid, be credited against the support obligor's total monthly child support obligation: Provided, That in no event shall the credits given under this subdivision reduce the support obligor's total monthly child support obligation to an amount less than such support obligor's primary support obligation.

Thus, under the provisions of 6 *W.Va. Code of State Rules* § 78–16–2 (1988), payments to third parties, such as home loan installments, if actually paid, may be credited against the support obligor's total monthly child support obligation but only to the extent that such payments have been specifically denominated as child support by a court order or a valid separation agreement.

As we have already pointed out in the case before us, the circuit court did not specifically designate in the final divorce decree whether the home loan installments were alimony, child support or installment payments for the distribution of marital property. Under the particular facts of this case, however, we have found that the house payments, as set forth in the final divorce decree, constitute child support. Therefore, the circuit court did not err in allowing Mr. Sly a credit against his support obligation in calculating the child support under the guidelines. Although it is not clear from the record how the circuit court calculated the credit against Mr. Sly's support obligation,[12] we find that the credit does not reduce Mr. Sly's total monthly

child support obligation to an amount less than his primary support obligation. Thus, the circuit court did not abuse its discretion in giving credit to Mr. Sly against his support obligation for making half of the house payment on the family home. Mr. Sly, therefore, will be required to pay half of the house payment in the amount of $210.70 and child support in the amount of $400.00, for a total monthly payment of $610.70, plus half of the insurance and taxes.

## IV

▪▪▪▪ Finally, Mrs. Topping contends that the circuit court erred in ordering her to execute a waiver to allocate the dependency exemption to Mr. Sly after the circuit court reduced the amounts Mr. Sly was obligated to pay for the house payments and child support. Mr. Sly maintains that the circuit court's decision to allocate the dependency exemption to him was consistent with our holding in *Soriano v. Soriano*, 184 W.Va. 302, 400 S.E.2d 546 (1990).[13]

We recognized in syllabus point 2 of *Soriano:*

>In a case where the dependency exemption is allocated, that is, where a trial court requires the custodial parent to execute the necessary waiver pursuant to 26 *U.S.C.* § 152(e)(2)(A), as amended, the trial court should set forth its reasons for doing so in the order awarding child support. These reasons should clearly demonstrate that it is more equitable to allocate the dependency exemption to the noncustodial parent than it would be to allow the custodial parent to claim the dependency exemption.

The circuit court in the present case recognized that Mr. Sly's monthly income was $2,810.17, whereas Mrs. Topping's monthly income was $500.00. The circuit court then determined that Mr. Sly should receive the benefit of the dependency exemption for two reasons. First, the court found that Mr. Sly was substantially contributing to

---

12. *See* n. 1, *supra.*

13. We note that *Soriano* was decided after the circuit court issued its decision in this case.

his daughter's support. Second, the court recognized that "[i]n view of [Mrs. Topping's] small amount of income and the finding by the Law Master that [her] new husband was unemployed, it would appear that [she] would derive benefits from a tax standpoint that would almost be useless to her while it would certainly aid [Mr. Sly]." The circuit court concluded that, under *Cross v. Cross, supra,* Mr. Sly would realize a greater tax liability savings from the dependency exemption than would Mrs. Topping because his income is much greater.[14] Based on our holdings in *Soriano* and *Cross,* we conclude that the circuit court did not abuse its discretion in allocating the dependency exemption to Mr. Sly.

Thus, for the reasons set forth herein, we conclude that the order of the Circuit Court of McDowell County should be affirmed.

Affirmed.

14. In *Cross,* we recognized that IRC § 152(e), which allows the court to allocate the income tax child dependency exemption to the noncustodial parent, provides an economic benefit that is of significantly greater value to a parent with income than it is to a parent without income. 178 W.Va. at 574, 363 S.E.2d at 460.