704 S.E.2d 656

**Beverly J. MULLINS, Petitioner Below, Appellant**

v.

**Richard R. MULLINS, Respondent Below, Appellee.**

**No. 35324.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 2010.

Decided Nov. 18, 2010.

James T. Cooper, Esq., Law Offices of James T. Cooper, Charleston, WV, for Appellant.

Andrew S. Nason, Esq., Pepper & Nason, Charleston, WV, for Appellee.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on December 11, 2008. In the order, the circuit court denied an appeal of a family court order entered on September 12, 2008, that was filed by the appellant and petitioner below, Beverly J. Mullins, k/n/a Beverly J. Hemmings (hereinafter "Ms. Hemmings"). Ms. Hemmings contends that the family court erred in calculating the past due child support owed to her by her ex-husband, the appellee and respondent below, Richard R. Mullins (hereinafter "Mr. Mullins"). Specifically, Ms. Hemmings claims that Mr. Mullins owes her $40,133.25 for unpaid child support and interest; yet, the family court only ordered him to pay her $12,212.00.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order is reversed, and this case is remanded for further proceedings consistent with this opinion.

## I.

### FACTS

The parties were married on September 9, 1995, and were divorced by an order of the Circuit Court of Kanawha County entered on June 2, 1999. During their marriage, the parties had one child, a son, who was born on August 14, 1997. Pursuant to the final divorce order and property settlement agreement, the parties agreed that they would equally share the parenting of their son and that Mr. Mullins would pay child support in

the amount of $400.00 per month. In addition, the parties agreed that they would each pay one-half of the daycare expenses and one-half of any costs for extracurricular activities. Mr. Mullins agreed to maintain medical insurance for the child at his expense.

On March 20, 2006, Mr. Mullins filed a petition for modification seeking to prohibit Ms. Hemmings from relocating to Raleigh, North Carolina, with their son upon her marriage to Aaron Hemmings. On March 30, 2006, Ms. Hemmings filed a Notice of Relocation, and on April 11, 2006, she filed a Response to the Petition for Modification and Counter–Petition. Ms. Hemmings alleged that Mr. Mullins had failed to pay his court-ordered child support and failed to maintain health insurance on their son causing her to incur medical expenses for him. She further claimed that she had not received her share of the proceeds from the sale of the marital home and that Mr. Mullins had failed to transfer certain marital funds into a trust account for their son as was set forth in the property settlement agreement. Finally, she sought approval of her plan to relocate to Raleigh, North Carolina, with the child.

Thereafter, the family court held a series of hearings on the issues raised in the petitions and, following a telephonic hearing on March 13, 2007, entered an order concluding

> that from the date of the Divorce Order until August of 2006 [1] the father should have paid eight-six (86) payments of child support. The father has paid Four Thousand Two Hundred Seventy Two Dollars ($4,272.00) in child support, and he is entitled to receive a credit for child support in the amount of Eight Thousand Seven Hundred Fifty–Eight Dollars and Seventy–Four Cents ($8,758.74) for the house payment and Nine Thousand One–Hundred Fifty Seven Dollars and Ninety Eight Cents ($9,157.98) that he overpaid in equally divided payments.[2] Dividing that number by Four Hundred Dollars ($400.00), the father is entitled to a finding that he has in effect paid 55.47 months of child support and he owes 30.53 months of child support arrears of Twelve Thousand Two Hundred Twelve Dollars ($12,212.00).

> Interest shall accrue as normally calculated on child support, assuming that the payment of Four Hundred Dollars ($400.00) for February 2005 was the first payment due and had not been paid, and no other payments had been made.

> The Court calculated child support based on the Income Shares Formula, and orders the mother to pay Eighteen Dollars ($18.00) in child support to the father.[3] If child support had begun in September 2006, the mother would have paid Two Hundred and Eighty–Eight Dollars ($288.00) to the father in child support up to December, 2007, and he is entitled to a credit against the unpaid arrears in child support in that amount.

(Footnotes added). Ms. Hemmings filed an appeal of the family court order with the circuit court which was denied by order entered on December 11, 2008. This appeal followed.

## II.

### STANDARD OF REVIEW

In the Syllabus of *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004), this Court explained:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

---

1. In August 2006, the custody arrangement changed and Mr. Mullins's child support obligation ended. *See* note 3, *infra.*

2. As will be discussed herein, the overpayment related to daycare and other expenses for the child.

3. Ms. Hemmings was ordered to pay child support because the family court ordered a 56/44 split in parenting time upon her relocation to North Carolina; the child now resides with Mr. Mullins 207 days per year and with Ms. Hemmings 158 days per year.

With these standards in mind, the assignments of error will be considered.

## III.

## DISCUSSION

While several matters were brought before the family court, the only issue in this appeal is the amount of past due child support and interest owed by Mr. Mullins. Ms. Hemmings first contends that the family court erred by giving Mr. Mullins an offset against the child support arrearage for mortgage payments he made on the former marital home. The family court concluded that Mr. Mullins was entitled to an offset of $8,758.74 against the child support arrearage for one-half of the house payments that Ms. Hemmings should have paid from the date of the divorce hearing until the beginning of the month immediately following the first refinance of the house which occurred when Ms. Hemmings transferred her interest in the property to Mr. Mullins.

The property settlement agreement provided that the martial residence would be immediately sold and that Ms. Hemmings would have possession of the house while it was on the market for sale. The agreement further provided that each party would pay half of the mortgage payments until the home was sold. Upon the sale of the home, the mortgage was to be paid in full, the first $25,000.00 of the sale proceeds was to be distributed to Mr. Mullins, and the remaining amount of the proceeds was to be split equally between the parties. Ms. Hemmings was to pay Mr. Mullins $10,000.00 out of her proceeds for his interest in the family automobile.

According to Ms. Hemmings, she moved out of the residence in March 2000, and agreed to transfer her interest in the home to Mr. Mullins in exchange for him being responsible for the entire mortgage payment each month. Mr. Mullins then lived in the home until it was finally sold in 2006. Mr. Mullins netted a profit of $48,651.47 from the sale of the home. Pursuant to the property settlement agreement, Mr. Mullins was to receive $36,825.74 from the sale proceeds and Ms. Hemmings would have received $11,825.73. According to Ms. Hemmings,

she paid Mr. Mullins $10,000.00 for his interest in the family automobile from other sources and agreed to relinquish her right to proceeds from the sale of the house in return for a release from any claim by Mr. Mullins for paying her share of the mortgage payments. Therefore, Ms. Hemmings contends that the family court erred by giving Mr. Mullins a credit against the child support arrearage in the amount of $8,758.74 for one-half of the mortgage payments that he made on the house between the date of the divorce decree and her relinquishment of her interest in the residence to him.

Mr. Mullins contends, however, that because both parties lived in the marital home after the divorce, first Ms. Hemmings and then himself, and because the child was continuously living in the marital home half of the time, the mortgage payments inured to the benefit of the child because they preserved the marital home. Therefore, Mr. Mullins reasons that the circuit court did not err in giving him a credit against the child support arrearage for those months that he paid the entire mortgage payment.

West Virginia.Code § 48–5–604 (2001) (Repl.Vol.2009) addresses the use and occupancy of a martial home in the context of an order granting a divorce. The statute provides, in pertinent part:

An order awarding the exclusive use and occupancy of the marital home may also require payments to third parties for home loan installments, land contract payments, rent, property taxes and insurance coverage. When requiring third-party payments, the court shall reduce them to a fixed monetary amount set forth in the order. The court shall specify whether third-party payments or portions of payments are spousal support, child support, a partial distribution of marital property or an allocation of marital debt. Unless the court identifies third-party payments as child support payments or as installment payments for the distribution of marital property, then such payments are spousal support. If the court does not identify the payments and the parties have waived any right to receive spousal support, the court

may identify the payments upon motion by any party.

W. Va.Code § 48–5–604(c). This statute was previously examined by this Court in *Sly v. Sly*, 187 W.Va. 172, 416 S.E.2d 486 (1992).[4] In that divorce case, the ex-husband filed a petition to modify the divorce decree requesting, *inter alia*, that his child support obligation be reduced and that his ex-wife be required to pay the monthly house payments because she had remarried. The ex-wife appealed the circuit court order which gave her ex-husband credit against his child support obligation for paying half of the loan payments on the home, half of the insurance, and half of the taxes. The divorce decree provided that the ex-husband would pay the entire house payment and the ex-wife would have exclusive use of the house until the parties' child was eighteen years old. The ex-husband was also ordered to pay child support and alimony. The ex-wife argued that it was the intent of the parties to make the house payment obligation part of the equitable distribution of their marital assets. Her ex-husband maintained, however, that at least half of the house payment was intended as child support and that none of the payments were part of the equitable distribution of the martial property. The divorce order was silent as to whether the house payments constituted child support or installment payments for the distribution of marital property.

In determining whether this circuit court properly deemed part of the house payment obligation as child support in *Sly*, this Court first considered the language of W. Va.Code § 48–2–15(b)(4), now W. Va.Code § 48–5–506. This Court determined that the statute was clear and unambiguous, but its application to the facts of *Sly* was difficult because

the divorce order was silent as to the purpose of the ex-husband's obligation to pay the house payments. Upon close review of the divorce decree and the recommendation from a special commissioner which was the basis for the divorce decree, this Court found that the circuit court did not err in deeming half of the house payments made by the ex-husband as child support. In that regard, this Court noted that the divorce decree provided that the ex-wife's exclusive possession of the marital home would terminate when the parties' child reached eighteen years of age and that the home would be sold at that time. This Court noted that the decree did not provide that the ex-wife's exclusive use and possession of the marital home would terminate upon her remarriage. This Court explained that had such language been included in the divorce decree it would have indicated that the house payment was alimony. To the contrary, the language of the divorce degree clearly suggested that the circuit court intended that the family home would provide shelter for the parties' child and, therefore, serve as child support. *Sly*, 187 W.Va. at 177, 416 S.E.2d at 491.

■ Upon close examination of the divorce decree and the property settlement agreement in the case at bar, we find nothing to indicate that any portion of the mortgage payment on the marital residence was intended to serve as child support. Instead, the property settlement agreement stated that the martial residence was to be listed for sale immediately and that until the home was sold, each party would be responsible for one-half of the mortgage payment. Upon the sale of the house, the property settlement clearly specified how the proceeds from the sale of the marital residence would be divided between the parties. While Ms. Hem-

---

4. Since *Sly* was decided, the statute has been amended and recodified; although some of the language of the statute was changed, the meaning is the same. The provision at issue was found at W. Va.Code § 48–2–15(b)(4) (1991) and was set forth in *Sly* as follows:

The court may require payments to third parties in the form of home loan installments, land contract payments, rent, payments for utility services, property taxes, insurance coverage, or other expenses or charges reasonably necessary for the use and occupancy of the marital

domicile. Payments made to a third party pursuant to this subdivision for the benefit of the other party shall be deemed to be alimony, child support or installment payments for the distribution of marital property, ... Provided, That if the court does not set forth in the order that a portion of such payments is to be deemed child support or installment payments for the distribution of marital property, then all such payments ... shall be deemed to be alimony.

*Sly*, 187 W.Va. at 176, 416 S.E.2d at 490.

mings was given exclusive use of the martial home until it was sold, Mr. Mullins was to receive a greater share of the profits upon the sale of the house. The fact that Mr. Mullins may have paid the entire mortgage payment for a few months before Ms. Hemmings moved out of the house is of no consequence. The parties obviously modified the terms of the property settlement agreement with regard to the marital home when it did not immediately sell. Apparently, Ms. Hemmings moved out of the home and gave up all of her interest in the house and any profits when it sold. Regardless of how the parties may have modified their agreement concerning the marital residence, the divorce decree and the property settlement agreement provided that both parties would pay half of the monthly mortgage payment and there is simply no basis for this Court to conclude that any mortgage payments that were made by Mr. Mullins, either in whole or in part, were intended to serve as child support. Therefore, the circuit court abused its discretion by giving Mr. Mullins a credit against the child support arrearage in the amount of $8,758.74 for the house payments. Accordingly, the portion of the family court order granting Mr. Mullins an offset of $8,758.74 for the house payments is reversed.

Next, Ms. Hemmings contends that the family court erred by giving Mr. Mullins a credit of $9,157.98 against the child support arrearage for expenses he paid on behalf of their son and failing to give her credit for all the expenses she paid. The divorce decree and property settlement agreement provided that the parties would split the costs of daycare and extracurricular activities. The parties employed Twila Blake to provide daycare for their child at a cost of $230.00 per week. The family court order states:

F. That at the hearing the parties stipulated that the monies paid by the father to Twila Blake and the mother's payments to Twila Blake should have been the same amount of money. The Court considered the mother's extra payments to Twila Blake and the father's testimony that such payments were not for the normal day care, but for extra services. That Twila Blake has made no claim for unpaid daycare expenses and therefore those daycare expenses would be "a wash" and the Court therefore does not have to calculate those numbers to arrive at an arrearage figure.

G. The Court finds that the mother paid Three Thousand Three Hundred Eighty Three Dollars and Fifty Nine Cents ($3,383.59) for which she is entitled to a fifty percent (50%) payment by the father, and the father paid Twenty One Thousand Six Hundred Ninety Nine Dollars and Fifty Five Cents ($21,699.55) toward the child's expenses and he is entitled to receive a fifty percent (50%) contribution from the mother. By subtracting the amount that the father paid from the amount the mother paid, leaves Eighteen Thousand Three Hundred Fifteen Dollars and Ninety Six Cents ($18,315.96) and dividing the remainder by two, the father is entitled to a credit against child support in the amount of Nine Thousand One Hundred Fifty Seven Dollars and Ninety Eight Cents ($9,157.98).

Ms. Hemmings asserts that the $21,699.55 credit that was given to Mr. Mullins for the child's expenses was based upon a spreadsheet prepared by his attorney with no copies of cancelled checks to support the claimed expenses, only handwritten entries on a calendar. In contrast, she submitted copies of cancelled checks totaling $18,656.18 which constituted the payments she made for child's expenses. Without any explanation, the family court subtracted more than $15,000.00 from that amount and found that the expenses she paid only totaled $3,383.59. Ms. Hemmings argues that there was insufficient evidence for the family court to discount the total expenses she claimed and find that Mr. Mullins was entitled to an offset of $9,157.98 against the child support arrearage for expenses he paid on behalf of their child.

In response, Mr. Mullins claims that the extra payments that Ms. Hemmings made to Twila Blake were not for child care services but rather were for additional work including cleaning her house, keeping their son past the 5:00 pick-up time, and house/dog sitting. Mr. Mullins maintains that because he and Ms. Hemmings alternated weeks caring for their child and likewise, alternated weeks

paying for daycare and because Twila Blake has made no claim for unpaid child care expenses, the family court did not err by not giving any consideration to the expenses paid to Twila Blake by Ms. Hemmings. With respect to the additional expenses incurred by him, Mr. Mullins states that the record shows that he cared for their child more than half of the time, and therefore obviously incurred more expenses than Ms. Hemmings.

█ Upon review, this Court is unable to determine whether the family court abused its discretion in awarding Mr. Mullins an offset in the amount of $9,157.98 for expenses he incurred on behalf of the child because the family court order does not provide sufficient findings of facts. "This Court has found, in various contexts, that meaningful appellate review of the decision of a lower court sitting without a jury may occur only when specific findings of fact and conclusions of law are contained in the appellate record." *Louden v. West Virginia Division of Environmental Protection,* 209 W.Va. 689, 694, 551 S.E.2d 25, 30 (2001). Without findings of fact and conclusions of law, this Court is unable to determine the basis for the court's decision and whether any error has occurred. Consequently, in cases where there is an absence of adequate factual findings, it is necessary to remand the matter to the lower court to state or, at a minimum, amplify its findings so that meaningful appellate review may occur. *See, e.g., Mitchell v. Mitchell,* 205 W.Va. 203, 517 S.E.2d 300 (1999) (remanding for adequate factual findings regarding the court's decision to deviate from the child support formula in determining the amount of monthly child support owed).

█ In this case, the family court determined that Mr. Mullins was entitled to an offset of $9,157.98 against the child support arrearage for expenses he incurred on behalf of the child. The family court order, however, contains insufficient findings of fact with regard to the basis for the court's determination. While the family court found that the daycare expenses were "a wash," the court then awarded Mr. Mullins a credit against the child support arrearage for additional expenses he incurred without any explanation as to the nature of those expenses.

Likewise, the court's reasoning for only giving Ms. Hemmings a credit of $3,383.59 even though she claimed expenses in the amount of $18,656.18 is lacking. While it appears that some of Ms. Hemmings's claimed expenses were disallowed because they were not related to the care of the child, the order is unclear given the court's earlier conclusion that daycare expenses were "a wash." Absent detailed findings of fact to show the nature of the expenses paid by each party, this court is unable to ascertain whether there was an abuse of discretion with regard to the offset granted to Mr. Mullins for expenses he incurred on behalf of the child. Therefore, it is necessary to reverse this portion of the family court order and remand this case to permit the family court to make adequate factual findings on this issue.

Also, upon remand, the family court should make findings of fact with regard to the medical expenses that Ms. Hemmings allegedly incurred on behalf of the child. She contends that the family court erred by failing to consider her claim that she deserved a credit for medical expenses she paid on behalf of the child because Mr. Mullins failed to maintain health insurance for their child from June 2, 1999, to November 19, 2005, as required by the divorce decree and property settlement agreement. The family court order is completely silent on this issue, and, therefore, this Court is unable to determine the family court's basis for not considering Ms. Hemmings's claim. Accordingly, this issue should also be considered upon remand and adequate findings of fact and conclusion of law should be included in the family court order.

█ Finally, Ms. Hemmings argues that the family court erred by ordering that interest be calculated on the child support arrearage beginning February 2005. As previously noted, the family court order states:

> Interest shall accrue as normally calculated on child support, assuming that the payment of Four Hundred Dollars ($400.00) for February 2005 was the first payment due and had not been paid, and no other payments had been made.

According to Ms. Hemmings, Mr. Mullins made only twelve months of child support payments between June 2, 1999, and March 2006, and a majority of the payments made were partial payments. Ms. Hemmings asserts that the family court used an arbitrary method of calculating the arrearage that in effect altered the amount of interest due on the accrued child support installments. Ms. Hemmings maintains that the calculation of interest should have been made on a month-to-month basis based upon when the unpaid child support payments were due.

In response, Mr. Mullins argues that the family court did not err by calculating the interest on the arrearage. According to Mr. Mullins, the method used by the family court to calculate the interest on the arrearage was not arbitrary but was based on actual dollars paid.

■ Upon review of the record, we find that the family court abused its discretion by ordering that interest on the past due child support be calculated as if February 2005 was the first unpaid child support payment. It is well established that "[m]ature alimony and child support installments are judgments for money which accrue statutory interest from the date the payments are due." Syllabus Point 5, *Goff v. Goff,* 177 W.Va. 742, 356 S.E.2d 496 (1987). Therefore, Ms. Hemmings is entitled to statutory interest on each unpaid child support installment from the date the payment matured to the date total judgment is rendered. Accordingly, upon remand, interest on the past due child support should be calculated in accordance with *Goff.*

### IV.

### CONCLUSION

For the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on December 11, 2008, is reversed, and this case is remanded to the Family Court of Kanawha County for further proceedings consistent with this opinion.

Reversed and remanded.