N THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

August 6, 2025

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

CHET BURGESS and KIMBERLY BURGESS,
Applicants Below, Petitioners

v.) No. 24-ICA-437 (W. Va. Consol. Pub. Ret. Bd. (In re: Chet Burgess))

WEST VIRGINIA CONSOLIDATED PUBLIC RETIREMENT BOARD,
Respondent Below, Respondent

## MEMORANDUM DECISION

Petitioners Chet Burgess and Kimberly Burgess appeal the October 9, 2024, order of the West Virginia Consolidated Public Retirement Board ("Board"), which determined that petitioners had received an overpayment from Mr. Burgess' Public Employees Retirement System ("PERS") annuity, ended further annuity payments, and required petitioners to reimburse the Board for all annuity funds disbursed to them. The Board filed a response.[1] Petitioners filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the record on appeal and the applicable law, we find that deficiencies in the record prevent this Court from engaging in a meaningful appellate review to determine whether there is a substantial question of law or prejudicial error. As explained below, a memorandum decision vacating the order on appeal and remanding this matter to the Board for further proceedings is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Burgess and Ms. Burgess were married in 1982 and divorced in 2004. As part of the divorce, the family court awarded Ms. Burgess a portion of Mr. Burgess' PERS annuity. A Qualified Domestic Relations Order ("QDRO") was entered by the family court on June 25, 2004. By separate letters dated October 6, 2004, the Board informed petitioners that the QDRO had been received.

PERS is governed by the West Virginia Public Employees Retirement Act (the "Act"). *See* W. Va. Code §§ 5-10-1 to -55. Mr. Burgess was employed by the West Virginia Department of Highways ("DOH"), a PERS participating employer, from August 1987 until his retirement in November 2011. During a portion of this time, Mr. Burgess worked in either a part-time or full-time capacity for the City of Madison ("Madison"), holding such positions as a police officer, municipal judge, and eventually the chief of police.

---

[1] Petitioners are represented by Lonnie C. Simmons, Esq. The Board is represented by Ronda L. Harvey, Esq.

1

Madison also participates in PERS. The Board's records show that from November 2005 to October 2009, monthly PERS contributions were submitted for Mr. Burgess by both the DOH and Madison. According to the Board, the PERS contributions during that time period establish that Mr. Burgess was working full-time for both the DOH and Madison at the same time. Mr. Burgess resigned from Madison in 2009 after his DOH supervisor informed him that he could not work both jobs simultaneously.

In 2011, Madison offered Mr. Burgess the full-time chief of police position. On March 9, 2011, Madison faxed the Board a completed copy of its *Verification of Employment Status* form ("Verification Form") reflecting this full-time employment. Mr. Burgess testified below that he viewed this as an opportunity to retire from the DOH, collect his PERS annuity, and earn additional income by working full-time for Madison.

Mr. Burgess met with a Board retirement advisor around March 15, 2011, to discuss his retirement from the DOH. Mr. Burgess testified that he discussed his plan to retire and work for Madison with the retirement advisor. Mr. Burgess stated that the advisor informed him that while he could not receive his PERS annuity if he accepted other State employment, he could work full-time for any city or county government and still receive his PERS annuity payments. Mr. Burgess could not recall the name of the retirement advisor. Mr. Burgess also indicated that Madison city officials had contacted the Board and were told the same information. Taking this information into consideration, Mr. Burgess retired from the DOH on November 30, 2011, and thereafter, petitioners started receiving their PERS annuity payments. Mr. Burgess began full-time employment with Madison on December 1, 2011, however, Madison neither submitted reports listing Mr. Burgess as an employee, nor did they remit PERS contributions on his behalf.

Madison was audited by the state auditor's office in 2019 ("2019 Audit"). The 2019 Audit revealed, among other things, that Madison was not remitting mandatory PERS contributions on behalf of certain employees, including Mr. Burgess, as required by the Act. *See* W. Va. Code § 5-10-17 (2020) (mandating that all full-time employees of PERS participating employers be PERS members); W. Va. Code R. § 162-5-2.3 (2014) (defining full-time employment as: "Employment of an employee by a participating public employer in a position which normally requires twelve (12) months per calendar year service and requires at least one thousand forty (1,040) hours per calendar year service in that position.").

In March 2020, a Madison official generally informed the Board of the 2019 Audit findings without identifying Mr. Burgess by name. On June 1, 2022,[2] the Board sent a letter

---

[2] On its face, this letter is temporally inconsistent. The letter is dated June 1, 2022; however, it references Mr. Burgess' employment as of April 2023. Because the date upon which the Board discovered the underlying error is a disputed factual issue and highly

2

to Mr. Burgess, advising him that an audit of his PERS account revealed that, pursuant to West Virginia Code § 5-10-44 (2022),[3] he may be eligible to purchase additional PERS service credits from November 30, 2011, through April 1, 2023, which at the time, was the length of Mr. Burgess' ongoing employment with Madison.

By letter dated December 29, 2022, a Madison official informed the Board that Mr. Burgess was a full-time employee who was not participating in PERS. This letter identified Mr. Burgess by name. A Board investigation ensued, and in February 2023, the Board determined that no PERS contributions had been made for Mr. Burgess since he was hired by Madison in 2011.

Around March 1, 2023, the Board suspended petitioners' PERS annuity payments. Mr. Burgess contacted the Board and was informed that he was not eligible to receive his annuity while he was employed full-time by Madison. He was also told that to the extent a Board retirement advisor may have explained things differently in 2011, he was misinformed.

The Board formally notified Mr. Burgess of the cessation of his annuity benefits by letter dated April 2, 2024. The letter explained that the payments were terminated on March 1, 2023, because since his DOH retirement, Mr. Burgess maintained full-time employment with another PERS employer, Madison. It was further explained that due to this ineligibility, petitioners had erroneously received annuity payments from December 2011 to February 2023, totaling more than $400,000, and that pursuant to West Virginia Code § 5-10-44, petitioners were responsible for repaying the amounts individually distributed to them, and the letter included repayment options.

Petitioners filed an administrative appeal on May 1, 2024, and a hearing was held before the Board's hearing officer on August 6, 2024. At the hearing, petitioners testified, as did Terasa Miller, the Board's Deputy Director and Chief Operating Officer. On October 7, 2024, the hearing officer provided the Board with a recommended decision, which the Board adopted verbatim in its October 9, 2024, order.

In its order, the Board offered no findings regarding Mr. Burgess' testimony, one sentence regarding Ms. Burgess' testimony, and briefly addressed Ms. Miller's testimony. The Board found that Ms. Miller testified that PERS members, including Mr. Burgess, had

---

relevant to issues at hand, the timeframe surrounding this letter must be further clarified upon remand.

[3] West Virginia Code § 5-10-44 provides guidelines for the Board to follow when errors, overpayments, and underpayments are determined to have occurred with a PERS retirement annuity account.

been mailed brochures after his DOH retirement, which included information about post-retirement employment. Ms. Miller noted, and the Board found, that the brochures specifically stated, "[i]f a retiree becomes regularly employed by a [PERS] participating employer payment of his or her annuity shall be suspended during his or her [PERS] employment, and he or she shall again become a contributing member of the [PERS] retirement system." The Board determined that Mr. Burgess was not eligible to receive payments from his annuity because he never severed his employment with a PERS participating employer and, thus, never retired from the PERS system. *See* W. Va. Code § 5-10-2(24) (stating that "'[r]etirement' means a member's withdrawal from the employ of a participating public employer and the commencement of an annuity by the retirement system[.]").

The Board also rejected Mr. Burgess' contention that the doctrine of equitable estoppel should be applied to his case. On this issue, the Board determined that estoppel did not apply because Mr. Burgess never informed the Board of his post-DOH employment with Madison and since Madison did not report Mr. Burgess' employment to the Board or remit contributions on his behalf, the Board did not know that Mr. Burgess was engaged in full-time employment with a PERS participating employer.

Similarly, the Board rejected petitioners' objection to the requirement that they must repay all annuity payments paid to them. The Board found that Mr. Burgess was ineligible for his retirement annuity because he did not sever his PERS employment. Thus, pursuant to West Virginia Code § 5-10-44, the Board was required to seek repayment, and had no authority to deviate from the Act's requirements. This appeal followed.[4]

Our review of this matter is governed by West Virginia Code § 29A-5-4(g) (2021), which states:

---

[4] The Board's order also found that Ms. Burgess did not have standing to challenge the Board's demand for repayment because she was not a PERS retirant, but rather, received annuity payments subject to a QDRO. For those reasons, the Board found her involvement in the case to be purely derivative of Mr. Burgess. Ms. Burgess challenges this finding on appeal, arguing that it denied her fundamental due process. However, because Ms. Burgess was permitted by the Board to participate in the hearing below and the Board's order includes findings with respect to Ms. Burgess' testimony, we conclude that under the facts of this case, Ms. Burgess' participation mooted the issue of whether she had standing to challenge the Board's determination, thereby removing the issue from the Board's consideration. In other words, the Board's retrospective determination that Ms. Burgess lacked standing was unfounded and, as a result, we do not need to further address this argument in this appeal.

The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the agency;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

On appeal, petitioners present two assignments of error. First, they assert that the Board should be required to consider what effect, if any, that our recent decision in *Stemple v. West Virginia Consolidated Public Retirement Board*, 251 W. Va. 121, 909 S.E.2d 634 (Ct. App. 2024) has on the matter. Similarly, petitioners contend that the record in this case is underdeveloped because the Board failed to consider our Supreme Court of Appeals' prior application of West Virginia Code § 5-10-44 in *West Virginia Consolidated Public Retirement Board v. Clark*, 245 W. Va. 510, 859 S.E.2d 453 (2021). Under these authorities, petitioners assert that the Verification Form placed the Board on notice of Mr. Burgess' forthcoming Madison employment and yet, the Board failed to discover and act upon the error for approximately twelve years. Therefore, the Board should be prohibited from prospectively adjusting petitioners' annuity payments. Conversely, the Board maintains on appeal that it did not learn of Mr. Burgess' Madison employment until December 2022 and that its investigation did not confirm the circumstances surrounding Mr. Burgess' employment until February 2023 and, thus, it acted in a timely manner. Moreover, the Board claims that record "is full of testimony regarding [the Board]'s investigation and the time of [the Board]'s corrective action."[5]

---

[5] The Board also noted that petitioners raised *Stemple* and *Clark* arguments in support of their motion to stay, which this Court refused on November 25, 2024. The Board contends that this Court's refusal of the motion moots petitioners' use of the same arguments in their brief. We find this contention to be untenable. *See* W. Va. R. App. P. 5(h) ("After the response brief or summary response has been filed . . . and any reply brief deemed necessary has been filed . . . the appeal will be deemed to be mature, and the Intermediate Court . . . will fully consider the written arguments of all parties to the appeal."). Pursuant to Rule 5 of the West Virginia Rules of Appellate Procedure, this Court's grant or refusal of a motion to stay does not act as a decision on the merits regarding any substantive arguments made by the parties.

Second, petitioners aver that the Board erred by failing to conclude that equitable estoppel applied to bar any repayment obligation. On this issue, it is argued that Mr. Burgess testified that he met with a Board retirement advisor, informed the advisor of his intentions, was told by the advisor that he could receive his retirement and work full-time for Madison, and that he acted in reliance upon the advisor's representations. According to Mr. Burgess, this testimony was unrefuted below. On appeal, the Board contends that Mr. Burgess' testimony on this issue was too vague to be credible, and it is improbable that a Board retirement advisor would provide inaccurate advice regarding PERS policy.

However, upon review, we conclude that the Board's October 9, 2024, order does not contain sufficient findings of fact and conclusions of law, thereby impeding our ability to engage in a meaningful appellate review. West Virginia Code § 29A-5-3 (1964) requires:

> Every final order or decision rendered by any agency in a contested case shall be in writing or stated in the record and shall be accompanied by findings of fact and conclusions of law. Prior to the rendering of any final order or decision, any party may propose findings of fact and conclusions of law. If proposed, all other parties shall be given an opportunity to except to such proposed findings and conclusions, and the final order or decision shall include a ruling on each proposed finding. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings[.]

Here, the Board's order contains several deficiencies. For one, the Board's ruling is predicated upon its application of West Virginia Code § 5-10-44(e) (2022), which provides, in part:

> If any error results in any member, retirant, beneficiary, entity or other individual receiving from the system more than he would have been entitled to receive had the error not occurred, the board, upon learning of the error, shall correct the error in a timely manner. If correction of the error occurs after annuity payments to a retirant or beneficiary have commenced, the board shall prospectively adjust the payment of the benefit to the correct amount. In addition, the member, retirant, beneficiary, entity or other person who received the overpayment from the retirement system shall repay the amount of any overpayment to the retirement system in any manner permitted by the board[.]

After citing this statute, the Board summarily concluded that a statutory overpayment was made to petitioners and repayment was required. Critically, however, the order on appeal fails to articulate what facts from the record, if any, establish that an overpayment was made. We note that the intended usage of the term *overpayment* is not defined or otherwise limited by the Act. "In the absence of any specific indication to the

6

contrary, words used in a statute will be given their common, ordinary and accepted meanings." *Clark*, 245 W. Va. at 518, 859 S.E.2d at 461 (citing Syl. pt. 1, *Tug Valley Recovery Ctr. v. Mingo Cnty. Comm'n, W. Va.*, 164 W. Va. 94, 261 S.E.2d 165 (1979)). The common meaning of *overpayment* is "a payment that is more than the amount owed or due." Overpayment, *Black's Law Dictionary* (12th ed. 2024). Here, the Board's order is devoid of any analysis applying the term's plain meaning to the facts of the case. Moreover, even if the Board's order had sufficiently established that an overpayment occurred, the order is still insufficient because it fails to contemplate whether the overpayment constitutes an "error" as previously defined by this Court in *Stemple* or how any error was detrimental or injurious to the PERS system as a whole. *See* W. Va. Code § 5-10-44(a) (2022) (stating that as a general rule, the Board "shall correct errors in the retirement system . . . with the intent of placing the affected individual, entity[,] and retirement board in the position each would have been in had the error not occurred.").[6]

Similarly, the Board's order reflects that Ms. Miller and petitioners each testified and that various exhibits were admitted during the administrative hearing. However, the Board's order contains no findings detailing Mr. Burgess' testimony and only mentions the testimony of Ms. Miller and Ms. Burgess and the admitted exhibits in passing. According to the parties' briefs, they offered conflicting evidence on core factual issues; however, the order fails to reconcile that evidence by providing findings and analysis regarding the weight and credibility of any evidence presented below. Also noticeably absent from the Board's order are any findings or analysis which reconciles the parties' arguments regarding the Board's knowledge of Mr. Burgess' employment status given that the Board had the Verification Form in its possession prior to Mr. Burgess' meeting with the Board retirement advisor in 2011.

As previously established, the Board adopted the hearing officer's recommended decision as its order in this case. However, we take this opportunity to remind the Board that according to its own regulations: "The hearing officer shall . . . prepare formal findings of fact and conclusions of law, in which he or she states the reasons for his or her findings, and noting with specificity the evidence considered in reaching a recommendation." W. Va. Code R. § 162-2-7.2.6 (2016). While we also recognize that, pursuant to West Virginia Code of State Rules § 162-2-7.3.1 (2016), the Board "shall accept the recommendation of the hearing officer unless an abuse of discretion is found to have occurred, or unless the recommendation is found to be based upon an error in facts or contrary to law", its final order still must comply with West Virginia Code of State Rules § 162-2-7.2.6. Given the paucity of findings and analysis in the hearing officer's recommended decision, we conclude that the Board should have exercised its authority and rejected the hearing examiner's findings of fact and conclusions of law as insufficient.

---

[6] In other words, it is unclear from the Board's order as to how the PERS system was adversely affected and needed to be made "whole" by the early distribution of PERS annuity funds to Mr. Burgess and Ms. Burgess.

Simply put, without the Board providing sufficient findings of fact and conclusions of law as required by its own regulations, this Court is left to speculate as to the reasonings behind the Board's ruling. However, courts cannot engage in speculation, and we refuse to do so here. As our state's highest court has recognized:

> Without findings of fact and conclusions of law, [an appellate court] is unable to determine the basis for the court's decision and whether any error has occurred. Consequently, in cases where there is an absence of adequate factual findings, it is necessary to remand the matter to the lower court to state or, at a minimum, amplify its findings so that meaningful appellate review may occur.

*Mullins v. Mullins*, 226 W. Va. 656, 662, 704 S.E.2d 656, 662 (2010). We find this rationale equally instructive when considering the sufficiency of decisions issued by administrative tribunals. Here, because the Board's decision makes insufficient findings of fact and conclusions of law relevant to the evidence adduced at the administrative hearing, and also fails to set forth sufficient analysis and rationale for any of its findings and conclusions related to the issues present below, we are unable to determine the bases for the Board's decision and whether any error has occurred.

Therefore, we must vacate the Board's ruling and remand the matter to the Board for further development of the issues set forth herein,[7] as well as for the entry of a new order, which shall set forth findings of fact and conclusions of law sufficient to allow for meaningful appellate review should either party elect to file a new appeal.

Accordingly, we vacate the Board's October 9, 2024, order and remand the matter to the Board for further proceedings, consistent with this decision.

Vacated and Remanded.

**ISSUED:** August 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[7] On remand, the Board and the parties may also seek to develop the record on other issues which necessarily arise as part of its compliance with this Court's directives on remand.

8