# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**AMY HULL-WRIGHT, BETTY GARRETT SCHMIDT, SUSAN SCHWARTZ, and MITCHELL GARRETT,**
**Respondents Below, Petitioners**

**v.)      No. 25-ICA-304**      (Oil and Gas Conservation Comm'n Docket No. 404-490 Order No. 1)

**FILED**

**January 16, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**ARSENAL RESOURCES, LLC,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

Petitioners Amy Hull-Wright, Betty Garrett Schmidt, Susan Schwartz, and Mitchell Garrett appeal the July 17, 2025, order from the Oil and Gas Conservation Commission of West Virginia ("Commission"), which is part of the West Virginia Department of Environmental Protection ("WVDEP"). The Commission's order combined fifty-eight oil and gas tracts (totaling 361.52 acres) in Harrison County into a newly formed Marcellus Shale Formation horizontal drilling unit (in a process called "unitization"). Petitioners own portions of the mineral rights in two of the affected tracts. The Commission named the newly formed unit "the JOsborn 213 Unit" (the "Unit") and designated Respondent Arsenal Resources, LLC ("Arsenal") as operator. Petitioners objected to their inclusion within the Unit, arguing that Arsenal failed to make good faith offers for petitioners' interests within the Unit. Arsenal filed a response to petitioners' appeal.[1] Petitioners filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, we find that deficiencies in the order prevent this Court from engaging in a meaningful appellate review. As explained below, a memorandum decision vacating the order on appeal and remanding this matter to the Commission for further proceedings is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 19, 2025, Arsenal filed its Application for Pooling and Unitization of Horizontal Well Operation ("Application") to unitize the oil and gas tracts within the proposed Unit pursuant to West Virginia Code § 22C-9-7a (2022) (the "Act"). At the time of the Application, Arsenal had obtained consent from royalty owners within the Unit equaling 88.03% of the net acreage in the Unit, and 100% of the net acreage of the oil and

---

[1] Petitioners are represented by Edmund L. Wagoner, Esq., and Matthew B. Hansberry, Esq. Arsenal is represented by Max C. Gottlieb, Esq., Maureen F. Gleason, Esq., and Levi B. Pellegrin, Esq.

1

gas operators.[2] Additionally, Arsenal asserted that it made good faith efforts to obtain consent from all locatable interest holders. *See* W. Va. Code § 22C-9-7a(c)(2)(C)(i).[3] The Application included an affidavit by T.J. Baldwin, a landman for Arsenal, wherein he attested that Arsenal made good faith offers and efforts to obtain leases or consent to pool from the oil and gas interests within the Unit.

The Commission held an evidentiary hearing on Arsenal's Application on July 2, 2025, pursuant to W. Va. Code § 22C-9-10.[4] Relevant to this appeal, Arsenal adduced testimony from Mr. Baldwin[5], and petitioners called Petitioner Garrett to testify on their behalf. Mr. Baldwin testified as to Arsenal's good faith efforts to negotiate with petitioners. Petitioners' counsel extensively cross-examined Mr. Baldwin on this issue. Notably, while counsel was cross-examining Mr. Baldwin about his purported good faith negotiations with petitioners, a Commission representative interjected on behalf of the agency that the Commission was neither a judge nor a jury and, thus, it was not the Commission's duty to make factual or legal "judgment calls" whether the facts supported a finding of good faith.

---

[2] *See* W. Va. Code § 22C-9-7a(c)(2)(A) (requiring pre-application consent from royalty owners totaling 75% or more of the net acreage); W. Va. Code § 22C-9-7a(c)(2)(B)(i) (requiring pre-application consent from the oil and gas operators equal to 55% or more of the net acreage owned, leased, or operated by operators and the applicant).

[3] As a prerequisite, this statute states that an applicant must have:

Made good-faith offers to consent or agree to pool or unitize, and has negotiated in good faith with, all known and locatable royalty owners having executory interests in the oil and gas in the target formation within the acreage to be included in the proposed horizontal well unit who have not previously consented or agreed to the pooling or unitization of the interests and whose interests are not subject to development under § 37B-1-1, *et seq.* of this code[.]

[4] W. Va. Code § 22C-9-10(b) provides that "[a]ll of the pertinent provisions of article five [§§ 29A-5-1 to -5], chapter twenty-nine-a of this code shall apply to and govern the hearing and the administrative procedures in connection with and following such hearing, with like effect as if the provisions of said article five were set forth in extenso in this subsection." Thus, West Virginia Code §§ 29A-5-1 to -5, under the State Administrative Procedures Act, or "APA", govern the Commission's hearings and rulings.

[5] Arsenal also called geologist Dave Boyer and reservoir engineer Brandon Wedde as witnesses. However, as set forth by the order on appeal, Mr. Boyer's and Mr. Wedde's testimony was scientific in nature, and did not relate to the negotiations between the parties.

Instead, the representative stated that the Commission's only responsibility was to ensure that the Application contained the information required by the Act.[6]

Thereafter, Petitioner Garrett testified and offered a countervailing assessment of the facts to dispute Mr. Baldwin's contention that Arsenal made good faith efforts to negotiate with petitioners. At the hearing, petitioners submitted several exhibits into the record reflecting Mr. Baldwin's communication of Arsenal's offers to petitioners.[7] They were admitted without objection from Arsenal.

At the close of evidence, petitioners reiterated their contention that the Commission must deny the Application because Arsenal failed to meet the good faith requirement of West Virginia Code § 22C-9-7a(c)(2)(C)(i). *See* W. Va. Code § 22C-9-7a(e)(2) ("The commission may not issue a horizontal well unit order pursuant to this section unless it finds that the applicant has before the filing of the application met the requirements of subsection (c) of this section."). However, the Commission voted to approve the Application and memorialized its ruling by order entered on July 17, 2025.

Addressing the evidence adduced, the Commission made the following references regarding good faith. First, with respect to Arsenal, the Commission simply noted that "Mr. Baldwin testified . . . and described Antero's [sic] good faith efforts to locate and negotiate with owners that were unleased or had existing leases with insufficient pooling rights[.]" Second, the Commission noted that petitioners objected to the Application "based on their claim that Arsenal did not negotiate in good faith with them." The Commission further noted in shortform that "[Petitioner] Garrett testified regarding Arsenal's negotiations . . . and [petitioners] entered five exhibits into the record concerning negotiations with Arsenal." Given this information, the Commission made the singular determination that: "Arsenal has conducted good faith negotiations with all known and locatable executive interest holders." Ultimately, the Commission concluded: "Pursuant to West Virginia Code § 22C-9-7a(e)(1), the Commission has evaluated and considered all requirements set forth

---

[6] This remark was not made by a commissioner, but rather, by the Commission's general counsel, who was identified in the record as one of the Commission's staff members present at the hearing. Aside from this remark, there is no indication from the record that counsel was otherwise involved in the hearing. On appeal, Arsenal offers its own interpretation of counsel's remarks; however, we find Arsenal's view of the matter unpersuasive.

[7] These exhibits included an e-mail chain between Mr. Baldwin and Petitioner Hull-Wright and written letters Petitioner Garrett received from Mr. Baldwin. According to the record, the majority of the Garrett-Baldwin letters represent the identical letters sent by Mr. Baldwin to the remaining petitioners.

therein and concluded that the Application complies with the statute."[8] This appeal followed.

In this appeal, our review is governed by the State Administrative Procedures Act, which states:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021); *accord* W. Va. Code § 22C-9-11(a) (1998) (stating that judicial review of Commission orders is governed by West Virginia Code § 29A-5-4).

On appeal, petitioners argue that the Commission failed to properly consider whether the Application met the Act's requirements, especially given the Commission's stated refusal to weigh the evidence and determine whether there was a factual basis to support a finding that Arsenal negotiated in good faith. Conversely, Arsenal asserts that there was no error below, and that if this Court reviews the record, the facts will establish that petitioners' arguments are meritless.

However, upon review, we conclude that the Commission's July 17, 2025, order does not contain sufficient findings of fact and conclusions of law, thereby impeding our ability to engage in a meaningful appellate review. West Virginia Code § 29A-5-3 (1964) requires:

> Every final order or decision rendered by any agency in a contested case shall be in writing or stated in the record and shall be accompanied by findings of

---

[8] West Virginia Code § 22C-9-7a(e)(1) mandates that the Commission consider a specific set of factors when evaluating applications. Among those factors is whether the applicant complies with requirements of West Virginia Code § 22C-9-7a(c).

fact and conclusions of law. Prior to the rendering of any final order or decision, any party may propose findings of fact and conclusions of law. If proposed, all other parties shall be given an opportunity to except to such proposed findings and conclusions, and the final order or decision shall include a ruling on each proposed finding. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings[.]

W. Va. Code § 29A-5-3 (1964); *see* W. Va. Code § 22C-9-10(e) (1998) (providing that W. Va. Code § 29A-5-3 applies to the Commission's orders).

The Supreme Court of Appeals of West Virginia ("SCAWV") has explained that the State Administrative Procedures Act requires "a concise and explicit explanation of the facts underlying an agency's findings that the substantive statute has or has not been complied with. A simple recitation of findings of fact in bare statutory language will not suffice." *St. Mary's Hospital v. State Health Plan. and Dev. Agency*, 178 W. Va. 792, 796-97, 364 S.E.2d 805, 809-10 (1987). In the context of reviewing a lower court's decision, the SCAWV explained:

Without findings of fact and conclusions of law, this Court is unable to determine the basis for the court's decision and whether any error has occurred. In cases where there is an absence of adequate factual findings, it is necessary to remand the matter to the lower court to state or, at a minimum, amplify its findings so that meaningful appellate review may occur.

*Mullins v. Mullins*, 226 W. Va. 656, 662, 704 S.E.2d 656, 662 (2010) (per curiam) (citation modified). This Court has recognized that this principle "[is] equally instructive when considering the sufficiency of decisions issued by administrative tribunals." *Logan Gen. Hosp., LLC v. Boone Mem'l Hosp., Inc.*, No. 23-ICA-134, 2023 WL 7203357, at *3 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision).

After applying these principles to this case, the Court concludes that the Commission's order does not contain findings and analysis sufficient for appellate review. As highlighted above, the order identifies the witnesses for each party and the various exhibits that were admitted during the evidentiary hearing. However, the Commission's order contains no findings regarding the substance of Petitioner Garrett's testimony and only addresses the testimony of Arsenal's witnesses summarily.[9] Moreover, the order

---

[9] Specifically, the order provides the occupation and education background for Arsenal's witnesses before providing an overly generalized synopsis of their testimony accompanied by conclusory findings. Critically absent is any discussion or analysis regarding specific facts, data, or reports relied upon by Arsenal's witnesses to support their

merely states in passing that exhibits were admitted but is otherwise silent as to what the exhibits convey, let alone any factual findings that the Commission drew from the exhibits to support its decision to grant the Application. According to the parties' briefs, they offered conflicting evidence on the issue of good faith; however, the Commission's order fails to reconcile the evidence by providing findings and analysis regarding the weight and credibility of any evidence presented below. For example, the order makes no findings as to the date and amount of the offers made, let alone any factual findings regarding the parties' communications and negotiations.[10] Instead, the Commission's order simply contains conclusory statements to support its decision. This is problematic for the Commission because it has long been recognized that: "Where an administrative agency is required to find facts or state reasons as a basis for its order, the order must contain findings of facts, rather than conclusory statements, so as to withstand judicial scrutiny." Syl. Pt. 3, *Mountain Trucking Co. v. Pub. Serv. Comm'n*, 158 W. Va. 958, 216 S.E.2d 566 (1975).

Recently, this Court rejected a similar challenge to the Commission's finding of good faith in *Haughtland Resources, LLC v. SWN Production Company, LLC*, No. 25-ICA-84, 2025 WL 3162008 (W. Va. Ct. App. Nov. 12, 2025) (memorandum decision). However, we find that this case is distinguishable. In *Haughtland*, we rejected the challenges on good faith because Haughtland failed to effectively cross-examine SWN's witness on the issue and did not present evidence of negotiation-specific facts to counter SWN's assertions that it negotiated in good faith. *Id.* at *5. Upon review, we find that the record in this case is substantially more developed and requires reconciliation and analysis of conflicting evidence by the trier of fact. Thus, *Haughtland* does not control the outcome of this case.

Accordingly, we vacate the Commission's July 17, 2025, order and remand the matter to the Commission for further proceedings, consistent with this decision. On remand, the Commission shall consider all the evidence as the trier of fact and thereafter enter a new order ruling upon Arsenal's entire Application as required by the Act and other relevant statutes.[11] The new order shall contain sufficient findings of fact and conclusions

---

testimony and opinions. This is particularly significant because the Commission relied on them to grant the Application.

[10] The parties cite to portions of the evidence adduced below on appeal and argue that those facts support their respective positions. However, those are facts for the Commission to reconcile for the first time on remand.

[11] While we focus on the inadequacy of the Commission's written order, we note that the Commission's general counsel's remark, suggesting that the Commission could not act as a trier of fact in evaluating the conflicting evidence of good faith, was inaccurate. Before approving an application, the Commission is statutorily obligated to determine

of law to facilitate a meaningful appellate review should either party seek to file a new appeal.[12] The Clerk of this Court is hereby directed to issue the mandate contemporaneously herewith.

Vacated and Remanded.

**ISSUED:** January 16, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

---

whether the applicant engaged in good faith negotiations with all locatable executory interest holders. *See* W. Va. Code § 22C-9-7a(e)(2).

[12] Our decision herein does not address the merits and should not interpreted as suggesting the outcome the Commission should reach upon remand. Rather, this decision is predicated upon the necessity of a proper order, containing sufficient findings of facts (including an analysis of conflicting factual contentions in the record) and conclusions of law, from which this Court may afford the Commission's decision, whatever it may be, a meaningful appellate review.